SAMUEL D. DAVENPORT & others *vs.* ABRAHAM TILTON.

An attachment of property on mesne process is a lien or security on property, valid by the laws of this State, and is therefore within § 2 of the United States bankrupt act of 1841, which provides that such lien or security shall not be destroyed or impaired by any thing in that act contained.

When a discharge under the bankrupt act of 1841 is relied on as a bar to an action on a demand secured by attachment before proceedings in bankruptcy were instituted against the defendant, the plaintiff may have a special judgment rendered, and an execution awarded against the attached property only.

ASSUMPSIT for goods sold and delivered. The action was commenced, and the defendant's real estate attached, on the 19th of November 1842.

At the trial in the court of common pleas, before *Washburn,* J. the defendant gave in evidence his discharge, under the United States bankrupt law of 1841, purporting to discharge him from all debts due from him on the 17th of January 1843. The plaintiffs then introduced evidence that the defendant, on the 17th of October 1842, conveyed the real estate, attached by them in this action, to Chloe Proctor, by a deed which was recorded on the 21st of November 1842, two days after their attachment, and that this conveyance was not known to them when their attachment was made; that the defendant's application in bankruptcy was made on the 17th of January 1843, and that said real estate did not pass by virtue of the proceedings in bankruptcy, to the assignee of the defendant; and that the plaintiffs never proved the claim, which this action is brought to recover, against the estate of the defendant, in bankruptcy. And the plaintiffs requested the judge to instruct the jury to return a verdict for them, to the end that a special judgment and execution might be rendered and awarded by the court against said real estate, attached as aforesaid. But the judge declined so to do, and instructed the jury that said discharge, if unimpeached by fraud or irregularity, was a bar to the plaintiffs' recovery in this action. A verdict was returned for the defendant, and the plaintiffs alleged exceptions to said instructions.

*Walcott,* for the plaintiffs. The second section of the United States bankrupt act of 1841 provides "that nothing in this act contained shall be construed to annul, destroy or impair" (among other things) "any liens, mortgages or securities on property, real or personal, which may be valid by the laws of the States respectively." The simple question then is, whether an attachment of real estate is a *lien* or *security,* valid by the law of this Commonwealth. By Rev. Sts. *c.* 90, § 23, "all real estates that are liable to be taken in execution may be attached upon the original writ, and held as *security* to satisfy such judgment as the plaintiff may recover." The same provision is made by § 24 for the attachment of personal property, to be "held as *security.*" The definition of the word "lien," in Tomlins's & Jacob's Law Dict. necessarily includes our attachments on mesne process. See also *Grosvenor* v. *Gold,* 9 Mass. 210. *Downer* v. *Brackett,* and *Haughton* v. *Eustis,* 5 Law Reporter, 392, 505. *Kittredge* v. *Warren,* and *Kittredge* v. *Emerson,* 7 Law Reporter, 77, 312. *Hubbard* v. *Hamilton Bank,* 7 Met. 340.

This is a question in which the defendant's other creditors have no interest. If the plaintiffs' attachment fails, the deed to Chloe Proctor takes full effect. If the attachment holds, and any part of the land is left, after a levy of the plaintiffs' execution, that deed will avail *pro tanto,* as no interest in that land passed to the defendant's assignee. Story on Bailm. § 135.

The special judgment and execution which the plaintiffs seek are warranted by the Rev. Sts. *c.* 81, § 9.

*Josiah Adams,* for the defendant. The main question in this case, viz. whether attachments in this Commonwealth were intended to be included under the word "liens" in § 2 of the bankrupt act, has never been decided by this court. In *Hubbard* v. *Hamilton Bank,* 7 Met. 340, the question arose between attaching creditors and the receivers of the bank, and might have been decided in favor of the attachment, independently of the meaning of the word "liens" in that act. This question came before Story, J. in April 1842,

and, on full consideration, was decided against the attachment. *Ex parte Foster*, 5 Law Reporter, 55, and 2 Story R. 131. The doctrine of that case was affirmed by the same judge, in *Cook's case*, 5 Law Reporter, 443, and 2 Story R. 376; and was approved by Conkling, J. in the district court, in the northern district of New York, in *Allen's case*, 5 Law Reporter, 362.

Did our senators and representatives in congress, who voted for the bankrupt act, *intend* that a system of bankruptcy and our own law of attachment should exist together? Did they postpone the operation of the act from August 1841 to February 1842, to enable the most knowing and greedy creditors to prevent its ever operating at all, except to grant a discharge of the claims of those who had made no attachment? This would have been the effect, but for the timely decision in *Ex parte Foster*, by which the matter was supposed to be settled.

The law of preference by attachment had become odious in this Commonwealth, and the insolvent law, which had been in operation several years, before the passing of the bankrupt act, and was made to revive on the repeal of that act, expressly dissolved all attachments subsequently made, and transferred the property to the assignee. This law, however, was necessarily imperfect, and limited in its operation, and there was a strong public sentiment in favor of such relief as congress alone could give. It is not credible that the *intent* was to sanction, by the bankrupt act, the rights of attaching creditors, and annul the claims of others.

A *pro rata* distribution is essential to the being of a bankrupt law; nothing so much so, except the discharge. Without these, or either of them, a law is improperly termed a bankrupt law. They both belonged to every bankrupt act in England, for more than two hundred years; and the English meaning of " bankrupt law " must have been intended in the constitution. The words had no other meaning. This argument, however, would have no weight, if the word " attachments " had been inserted in the saving clause of the second

section in question, or if the word "liens" could mean only the same thing. But it is not so ; and the ordinary sense of the word " lien," in Massachusetts, is a right *to retain the possession* of another's property, till some claim, having relation to the same property, shall be satisfied. The most common instance is that of an innkeeper. This is the common law sense. Possession is essential to it. It is true that mortgages and attachments are sometimes called liens in the books, but not usually or often. They are included in only the most enlarged sense of the word, namely, a claim, of any kind, on property, as security for a debt. But the common use of the word is to designate what has no other name. In our insolvent law, (St. 1838, c. 163, § 5,) which dissolves attachments, it is provided that "the assignees shall have power to redeem all mortgages, conditional contracts, pledges *and* liens."

As the word " lien " has more than one signification in Massachusetts, it must take that, in the bankrupt act, which is most consistent with the other parts of that act, and with its general scope, object and purposes. The sense contended for by the defendant makes the act consistent throughout; while the opposite makes the act inconsistent with itself, and makes some of its most essential provisions of no effect. 1st. In some of the cases cited for the plaintiffs, attachments are classed with mortgages, and both are said to be liens. In the enlarged sense, they doubtless are. But if *liens* were intended to include attachments which are never accompanied with possession, as mortgages often are, it is inexplicable that in the saving clause, in § 3, " mortgages " is the next word after " liens," and *attachments* are not named at all. It must have been the intention to save the former only. 2d. The same section, in careful and strong language, provides against all manner of frauds ; fraudulent " future payments, securities, conveyances or transfers of property," &c. It was well known that in Massachusetts fraudulent *attachments* had become so common and so difficult of proof, that statutes had been passed to enable creditors to appear and contest their

validity. *Sts.* 1823, *c.* 142; 1832, *c.* 159. Rev. Sts. *c.* 90, §§ 83 – 93. Yet, on the construction of the bankrupt act contended for by the plaintiffs, such frauds are left without remedy. The act does not mention them, and it has no general words under which they can possibly be included. The obvious reason for the omission is, that even *bonâ fide* attachments, not being within the saving clause, were intended to be dissolved, and the property to pass to the assignee, with the other effects of the bankrupt. 3d. The first section of the bankrupt act prescribes what shall be deemed acts of bankruptcy, upon the commission of which the debtor may be declared a bankrupt, upon the petition of any creditor, who can prove the facts. If it was intended that any creditor might attach the debtor's property, it was worse than nugatory to make such a provision. No creditor would seek a *pro rata* dividend at his own expense, if he might secure both debt and costs by attachment. He would know that in the mean time other creditors would attach the property, and leave him only a nominal dividend, if any.

Attachments are not alluded to in the bankrupt act. They were deemed the antagonists of *pro rata* dividends, and needed not to be named. The insolvent law annulled them expressly, and the bankrupt law, by necessary implication.

In *Atlas Bank* v. *Nahant Bank*, 23 Pick. 480, this court held that the attachments of the creditors of a bank were dissolved by proceedings against the bank, under Rev. Sts. *c.* 44, for the benefit of all its creditors.

SHAW, C. J. The importance of the principal question presented by the present case is now much diminished by the length of time which has elapsed since the repeal of the bankrupt act, and the strong probability that few, if any, similar questions now remain unsettled. The question is, whether an attachment of property on mesne process, as regulated by the laws of Massachusetts, constitutes such a lien or security on property as to be saved to the attaching creditor, and prevented from passing to the assignee, by the proviso at the end of § 2 of the bankrupt law It is a condition, reservation, or

saving clause, annexed to that part of the act which provides for an assignment of the bankrupt's property, and declares, in general terms, that all his property and rights of property shall vest in the assignee for the benefit of his creditors. It is in these words: "And provided also, that nothing in this act contained shall be construed to annul, destroy, or impair any lawful rights of married women or minors, or any *liens*, mortgages, or other securities on property real or personal, which may be valid by the laws of the States respectively."

It has been argued that, as a principle of equity, when a proceeding is instituted for the satisfaction of the claims of all creditors, an attachment on mesne process, designed to obtain satisfaction in behalf of a particular creditor, must yield; and the authority of *Atlas Bank* v. *Nahant Bank*, 23 Pick. 480, is relied upon. That case did not go on the general principle, but on the construction of the Rev. Sts. *c.* 44; and it was held that where a bill had been filed by the bank commissioners, for the general benefit of creditors, and especially after an injunction issued, but before receivers were appointed, if an attachment was made by a particular creditor for his own benefit, it could not hold against the general creditors. But in *Hubbard* v. *Hamilton Bank*, 7 Met. 340, it was held that an attachment made by a creditor of a bank, before the application of the commissioners for an injunction, would hold against receivers subsequently appointed to take charge of the property for the general creditors. But these questions depended, as we think this question must depend, upon the construction of the statute under which it arises, and not much aid can be derived from considerations of mere expediency. As a general question of policy and expediency, we are inclined to the opinion that when it becomes necessary to settle and close up the affairs of a debtor, whether at his decease or during his life, true equity would require that all his property, which has not become appropriated and vested by his own act or the operation of law, should be applied to the payment of all his debts, and that an attachment on mesne process, being a sequestration of his

property, and placing it provisionally in the custody of the law, should give way to the more general sequestration of all his property for the satisfaction of all his debts.    In that case, the creditor will receive the whole amount of his debts, if there be assets, and his satisfaction *pro rata*, if there be a deficit; and as between him and other creditors, there seems no equitable ground on which he should have more.    Such is the law of Massachusetts in regard to the settlement of the estate of a deceased insolvent debtor, where the settlement and distribution of the estate must necessarily be final. Upon the appointment of an administrator, who takes the property as trustee for all the creditors, all attachments on mesne process are dissolved.    But, as we have already said, such considerations of general equity, however strongly they may influence the legislature in framing statutes, cannot change their construction where the terms are not doubtful. And upon the fullest consideration which we have been able to give the subject, this court are of opinion, that an attachment on mesne process, under the laws of Massachusetts, made before the commencement of bankrupt proceedings, is a lien or security upon property, within the meaning of the proviso above cited, and is therefore, by the terms of the bankrupt act, excepted out of the operation of the act which transfers the property of the bankrupt to the assignee.

After the very full and elaborate discussion of this subject, by the late Mr. Justice Story, of the supreme court of the United States, in the cases of *Ex parte Foster*, 2 Story R. 131, and *Matter of Bellows & Peck*, 3 Story R. 428, on the one side, and by Mr. Chief Justice Parker, of the supreme court of New Hampshire, in the cases of *Kittredge* v. *Warren*, and *Kittredge* v. *Emerson*, 7 Law Reporter, 77, 312, on the other side, it would be but an affectation ot learning, to enter at large into the argument, which is so entirely exhausted in the cases cited.

Perhaps something may be considered as added to the authority in support of the opinion we adopt, by the case, since decided by the supreme court of the United States, of

*Savage* v. *Best*, 3 Howard, 111. The decision there is, that in Kentucky a creditor obtains a lien upon the property of his debtor, by a delivery of a *fieri facias* to the sheriff, and therefore that this lien is protected by the bankrupt act, if the execution was so delivered, before the act of bankruptcy, though not levied until after. This, and we think several other cases go to decide the more general proposition that, whenever, by the law and usage of the State, the charge created by process of law becomes fixed, fastened to the property itself, so as to make it specifically liable for that debt, then it is a lien or security on property, reserved out of the bankrupt's assignment, and secured to the attaching creditor by the proviso in the act. In various States the property becomes so charged by different stages in the process, as by the attachment on mesne process, by the rendition of judgment, by the delivery of the execution to the sheriff, or by the commencement of the levy. But, at whichever of these steps, or by whatever other means, it does become fixed, there the bankrupt act recognizes and excepts it. By the law of Massachusetts, an attachment of property on mesne process is a specific charge upon the property, for the security for the debt sued for, and the property is set apart and placed in the custody of the law, for that·purpose, subject only to the condition that the attaching creditor shall obtain judgment in the suit, take out execution and levy it upon the property so held, within a limited time.

Indeed, it seems to be admitted, by those who maintain that an attachment on mesne process is not a lien absolutely protected, that it is yet a qualified lien, a security on property, not dissolved by the decree declaring the party bankrupt, nor yet by the assignment of the property to an assignee, but it is a qualified lien, which may be perfected and enforced by a judgment and execution, in case the bankrupt, after due time allowed for that purpose, does not obtain his discharge, or if, being obtained, he should not choose to plead it, or otherwise rely upon it as a bar to a judgment. If this be a correct view, then an attachment on mesne process is a qualified lien

or security on property, which, in certain events and in a cer·tain mode, may be perfected and made available, and shall then be protected from the operation of the assignment by the proviso in the bankrupt act.    Then the question is, whether the discharge of the bankrupt, provided for in another part of the act, though general in its terms, shall so operate as to bar every form of judgment, and deprive the attaching cred itor of the power of obtaining any execution, and thus prevent him from making his attachment available, by a levy on the attached property.

In general, it is a rule in the exposition of statutes, that every section, provision and clause shall be expounded by a reference to every other, and, if possible, every clause and provision shall avail and have the effect contemplated by the legislature, *ut res magis valeat quam pereat.*    Thus, if there be a clause in a statute expressed in general and unqualified terms, and without exception, it must be construed to mean what it imports, and to embrace the objects which come within its terms.    But if there is another provision in the same statute, which necessarily qualifies or limits the former, and requires an exception to it, then both are to be construed together, as if the qualification, condition or exception had been immediately annexed to the general provision.    To apply that rule to the present case :  As the bankrupt law provides, in general terms, that the bankrupt shall, upon certain conditions, obtain his discharge from al his debts in general terms, such discharge, *primâ facie*, shall bar all actions against the debtor, and of course prevent the recovery of any judgments against him.    But, if another part of the act provides that the discharge shall not operate as a bar to a judgment on certain fiduciary debts, or in cases where the bankrupt has given certain preferences, or committed other frauds, these are necessary exceptions to the generality of the terms granting a discharge.    And an exception, by necessary implication, from other provisions of the statute, is equivalent to an exception in terms.    This consideration leads to another rule of exposition, which is, that when a

statute confers a right, it confers all the necessary means by which such right can be established and made effectual The exception of liens, mortgages and securities on property is made for the benefit of the holders of such securities, and they are entitled to the use of the necessary legal means of making them available. If so, and if an attachment on mesne process is a lien or security on property, to be made available only by a judgment and execution of some kind, then the above proviso would in legal effect stand thus: Provided that nothing in this act contained shall be construed to prevent an attaching creditor from obtaining such judgment and execution as may be necessary to give legal effect to his attachment on the property of the bankrupt, made before the proceedings in bankruptcy were commenced. But where such exception is founded on implication, it must be a necessary implication, and will be extended no further than is necessary to give effect to the right reserved. The discharge will still have its full and complete effect, except so far as the existence and operation of a judgment may be necessary to enable the creditor to have a special execution awarded, and to take the attached property upon it. It would not have the usual attributes of a judgment, as record evidence of a debt, on which an action will lie, and upon which the person of the debtor may be arrested, or other property than that attached taken in satisfaction. In all these respects, the discharge would still have its effect. It would be, though still in form a judgment *in personam*, in substance and legal effect a judgment *in rem*, binding the specific property attached.

We have thus far considered the question, as it would usually present itself, as a question of competition between a particular attaching creditor and the general creditors under the bankruptcy. The only show of reason why such a particular attachment should be set aside by the proceedings in bankruptcy, or by the discharge obtained, is, that it would promote a more equal distribution amongst the general creditors. But that this would not necessarily be the

28 *

effect is manifest from the present case, which shows that, if the plaintiffs' right to hold the attached property were defeated, it would not go to the creditors, but to the holder of a prior unrecorded deed, who is no party to the bankrupt proceedings, and who is not entitled to claim any right, interest or benefit under them. So that if full effect were given to this discharge, to bar the plaintiffs' action, neither the creditors of the bankrupt, nor the bankrupt himself, would be benefitted by it, but it would be merely making use of the bankrupt proceedings to reverse a priority, which the plaintiffs had by law obtained, to a right of property, in favor of another person, claiming for his own use, both claiming under the laws of the State. As between the plaintiffs and such other claimant, the plaintiffs have the better legal title, and there seems no reason why they should be divested of it, by the accidental operation of the bankrupt law, in favor of a party who is no party to the bankrupt proceedings, and claims nothing under them. If, therefore, we entertained more doubt as to the general question, we should strongly incline to the opinion that, under the circumstances of the present case, the plaintiffs would have a legal right to maintain their prior lien, over the claim of another separate claimant, who, if the plaintiffs should fail, would hold the property against both the bankrupt and his creditors; and that the plaintiffs are entitled to such special judgment and award of execution as will enable them to maintain that priority. [See *Storm* v. *Waddell*, 2 Sandf. 494.]

Such special judgment, or special award of execution, although not frequent, is not unprecedented. The law having exempted the person of a debtor from arrest, after having taken the poor debtors' oath, leaving his property liable, the process may be varied accordingly. And generally, where a party has a right which cannot be obtained by the ordinary forms of process, the court will vary these forms, so as to secure the party his right. *Cooke* v. *Gibbs*, 3 Mass. 193. Express authority is given to the courts by Rev. Sts. c. 97, §§ 10. 11. to vary the forms of execution, when neces-

sary to adapt them to the changes of the law, or for other sufficient reasons. And it is believed, that such special judgment and award of execution are not unknown to the common law of England, when the rights of the parties require it.

In *Tappan* v. *Poor*, 15 Mass. 419, a special plea in bar of execution against the person and certain property of the defendants was pleaded, on the ground of their having obtained a qualified discharge under the law of Maryland. The plea was overruled, on the ground that under the circumstances, and between the parties before the court, the discharge in Maryland was not available in this Commonwealth. The plea in that case conforms substantially to a precedent in 3 Wentworth's Pleadings, 121, which appears to have been furnished by Mr. Baron Wood, who, I believe, before he was appointed to the court of exchequer, was an eminent special pleader.

A similar plea was pleaded in the case of *Smith* v. *Buchanan*, 1 East, 6. The plea was overruled, on the ground that a discharge under the law of Maryland could not affect a debt which accrued in England ; but no objection seems to have been taken to the form or sufficiency of the plea, if the case had been such as to warrant it. See also *Ingraham* v. *Phillips*, 1 Day, 117.

As all special pleading is now abolished by statute, in this State, neither the defendant's discharge is specially pleaded, nor is the plaintiffs' attachment replied specially, by way of avoidance. But the forms of proceeding do not alter the rules of law. The same rules must be applied to the facts appearing in the agreed statement, as if they were put upon the record by more formal pleadings. Upon these facts, the court are of opinion that the plaintiffs are entitled to such special and limited form of judgment and award of execution, as will enable them to levy upon the property attached upon the writ, and no more.

*Verdict set aside, and a new trial granted.*