## In re CRAFTS-RIORDON SHOE CO., Inc.

### (District Court, D. Massachusetts. December 15, 1910.)

### No. 15,053.

**1.** BANKRUPTCY (§ 59*)—"ACT OF BANKRUPTCY"—LIENS.

Bankr. Act July 1, 1898, c. 541, § 3a (3), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), declares that an "act of bankruptcy" occurs when a person has suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and has not, at least five days before sale or final disposition of any property affected by such preference, vacated or discharged the same. *Held*, that such provision includes all liens obtained by legal proceedings valid under state laws.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

**2.** BANKRUPTCY (§ 195*)—LIENS—ATTACHMENT—STATE LAW.

Under the laws of Massachusetts a plaintiff, attaching his debtor's goods under mesne process, obtains a lien thereon, though he has obtained no judgment, which lien is entitled to recognition in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 195.*]

**3.** BANKRUPTCY (§ 200*)—LIEN—AVOIDANCE.

Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a bankruptcy proceeding against him, shall be deemed void in case he is adjudged a bankrupt, and the property affected by the levy shall be deemed discharged, and shall pass to the trustee as a part of the estate, etc. *Held*, that since the lien under an attachment is obtained at the time of levy, if the levy is made more than four months before bankruptcy the lien is not avoided, though the judgment enforcing the lien is obtained within the four-month period.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 200.*]

**4.** BANKRUPTCY (§ 199*)—PREFERENCE BY LEGAL PROCEEDINGS—INSOLVENCY.

Where a bankrupt suffered or permitted an attachment of his property to continue undisturbed until the sale, and was insolvent five days before the sale, such proof was sufficient to justify a finding of insolvency at any time while the failure to lift the attachment continued.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 199.*]

**5.** BANKRUPTCY (§ 59*)—ACT OF BANKRUPTCY—"TRANSFER"—"PREFERENCE."

Though the fact that an alleged bankrupt parted with the possession of property levied on under an attachment to the attaching officer conditionally and as security be held to constitute a "transfer" of the property attached, as defined by Bankr. Act July 1, 1898, c. 541, § 1a (25), 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), it was essential, in order that such transfer should constitute an act of bankruptcy, that it so operate as to constitute a "preference," as defined by section 60a, to wit, that the enforcement of the transfer will enable one of the bankrupt's creditors to obtain a greater percentage of his debt than any other creditor of the same class.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759; vol. 8, pp. 7064–7070; vol. 8, p. 7819.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. BANKRUPTCY (§ 76*)—"CREDITOR."

To be a "creditor" of a bankrupt, with capacity to file an involuntary petition against him, a petitioner must own a demand or claim provable against the bankrupt in such proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 50, 99, 100; Dec. Dig. § 76.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

7. BANKRUPTCY (§ 91*)—INVOLUNTARY PETITION—PROVABLE CLAIM.

Proof that petitioners had brought an action against the alleged bankrupt on contract, and demanded $2,000 damages, without any other indication as to the nature or amount of the claim, was insufficient to justify a finding that petitioner had a provable claim allowable in bankruptcy, sufficient to confer standing as a petitioning creditor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 91.*]

8. BANKRUPTCY (§ 59*)—ACT OF BANKRUPTCY—PREFERENCE BY LEGAL PROCEEDINGS—ENFORCEMENT.

Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), provides that a person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against him in favor of a person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other creditor of the same class. Held, that where, prior to bankruptcy, a creditor had obtained a lien by attachment, and the property was sold under an order of court, not to satisfy the creditor's claim, but to save disproportionate expense in keeping the property, the fact that the bankrupt failed to discharge the attachment at least five days before such sale did not indicate that the enforcement of the attachment would ultimately operate to prefer the attaching creditor in case subsequent proceedings were taken in support of the attachment, and therefore did not constitute an act of bankruptcy, since section 3a (3), declaring a failure to dissolve an attachment five days before sale shall constitute an act of bankruptcy, did not include sales intended merely to substitute money for property without diminishing the bankrupt's estate, or to render the preference obtained by the attachment any more effective than it was before.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 59.*]

9. BANKRUPTCY (§ 200*)—LIENS—DISSOLUTION—ADJUDICATION.

The lien of an attachment on the property of an alleged bankrupt would not be dissolved by an adjudication under a petition filed more than four months after the attachment was made, either under Bankr. Act July 1, 1898, c. 541, § 67c (1), 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), expressly providing for the dissolution of such liens only when the proceedings wherein the attachment was had were begun within four months, or by section 67f, dealing with liens in general, but also construed to reach only attachments obtained within the four-month period.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 200.*]

In the matter of bankruptcy proceedings against the Crafts-Riordon Shoe Company, Incorporated. On involuntary petition for adjudication. Denied.

Eugene F. O'Neill and Robert A. B. Cook, for petitioning creditors. Murdoch & McLellan, for alleged bankrupt.

DODGE, District Judge. The question in this case is whether or not the defendant has committed an act of bankruptcy under section

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3a (3) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]).

On May 28, 1909, within four months preceding the filing of the petition, a suit was brought against it in the Massachusetts superior court, wherein on the same day its property was attached. It failed to dissolve the attachment. The plaintiffs requested a sale of the property, on the ground that it could not be kept without great and disproportionate expense. Thereupon the sheriff, after due appraisal, certificate, and notice to the defendant, sold the property June 29, 1909, and thereafter held the proceeds of the sale under attachment in its place. When this petition was filed there had been no final judgment in the suit. The writ was returnable on the first Monday of July, 1909 (July 5th). The petition was filed July 3, 1909. There is no dispute that the defendant was insolvent on June 24, 1909, five days before the sale, but there is no proof that it was insolvent at any earlier time.

[1] The provisions of the bankruptcy act regarding liens include all liens valid by the laws of the states. [2] By the laws of Massachusetts a plaintiff attaching under mesne process obtains a lien, though he has obtained no judgment, and such a lien as is entitled to recognition in bankruptcy proceedings. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841. [3] The lien is obtained at the time the attachment is made, and under the present bankrutpcy act it is not avoided by the provisions of section 67f if the attachment has been made more than four months before bankruptcy, though the judgment or decree in enforcement of the lien is not obtained until within the four months period referred to. Judge Lowell so held in this court in Re Blair, 108 Fed. 529, and the decision was later approved by the Supreme Court in Metcalf v. Barker, 187 U. S. 165, 174, 23 Sup. Ct. 67, 47 L. Ed. 122, overruling the District Court for the Southern District of New York in Re Lesser, 100 Fed. 433.

Of course, it does not follow that, because a lien has been obtained which would become void under section 67f by adjudication upon the petition, a preference has been obtained within the meaning of section 3a (3). The first inquiry must be whether or not the bankrupt has "suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings." [4] The bankrupt suffered or permitted the attachment to continue undisturbed until the sale, and he was insolvent five days before the sale. So much is admitted; but the bankrupt says that in any case no act of bankruptcy is proved, because he is not shown to have been insolvent when the attachment was made. If his failure to lift the attachment was otherwise suffering or permitting a preference, it seems to me enough to sustain the petition that his insolvency, at any time while the failure continued, has been shown.

[5] Admitting that there has been such a "transfer" of the property attached as will satisfy the definition of that term given in section 1a (25), because the bankrupt parted with the possession of it to the attaching officer conditionally and as security, it is further necessary, in order to call the transfer so accomplished a preference, as

defined in section 60a, that the effect of "the enforcement of such transfer will be to enable any one of the bankrupt's creditors to obtain a greater percentage of his debt than any other creditor of the same class." [6] To be creditors of the bankrupt, the plaintiffs in the suit must own a demand or claim provable against him in bankruptcy. Section 1a (9). A copy of the writ is annexed to the referee's report. This shows that the action brought was in contract, and the ad damnum $2,000; but there is no declaration or affidavit, and no further indication regarding the nature or amount of the claim. When the petition was filed the return day of the writ had not arrived, so that not only was there time remaining within which the bankrupt might appear to contest the claim, but he had not yet had any opportunity to appear for that purpose. [7] A finding, therefore, that the plaintiffs owned a demand or claim provable in bankruptcy, and were therefore creditors, must be based on the mere fact that they brought a pending suit. I find it difficult to believe that this is enough to justify the finding. It was said in W. A. Gage & Co. v. Bell (D. C.) 124 Fed. 371, 375, 376, that if a petitioning creditor presents a claim reasonably fair and honest on its face he is not bound to prove and establish it before adjudication, but may rely for the purpose of maintaining the petition upon its provable quality prima facie, whether it is to be disputed by the bankrupt or not. A petitioning creditor's claim would have the support of his affidavit to the petition. Not only the existence of a claim, but its provability in bankruptcy, are here left to be presumed from the bringing of a suit upon it in contract, and the fact that the suit was pending when the petition was filed.

The petition in bankruptcy alleges, on information and belief, that the claim sued on was for $700. If this be true, and if, as the officer's return shows, the plaintiffs' was the first attachment, they will, if they get judgment and levy execution, obtain payment of their claim in full. But the referee has made no finding as to the amount or the nature of the claim, and the plaintiffs' lien had given them, when the petition in bankruptcy was filed, nothing more than security for a claim remaining to be established, and which may turn out, so far as any evidence thus far offered has shown, to be wholly without merit.

[8] If the plaintiffs' lien stood as security for an undisputed debt, "enforcing" it would mean nothing more than leaving it to stand as such security and permitting the plaintiffs to take it unless the bankrupt paid the debt. But in order to say that the "enforcement" of this transfer will enable these plaintiffs to obtain a preferential percentage of their debt, "enforcement" must be made to include, not only leaving the transferred property to stand as security, but also the establishment of the debt by judgment in the suit and the taking of the property on execution—a construction hardly to be called natural or free from difficulty. These plaintiffs must do much more than enforce the rights of secured creditors in order to accomplish the result described in section 60a. They have still to prove their claim in court.

Admitting, however, that these plaintiffs have been "suffered or permitted to obtain a preference through legal proceedings," it is still nec-

essary, in order to make the third act of bankruptcy complete, that the alleged bankrupt has failed to vacate or discharge the preference at least five days before a "sale or final disposition" of the property effected. Re Vetterman (D. C.) 135 Fed. 443; Re Windt (D. C.) 177 Fed. 584. Here there has been a sale, but not a sale effecting any final disposition of the property. It is difficult to believe the language of section 3a (3) intended to include sales which accomplish no diminution of the bankrupt's assets, but merely substitute money for property, without rendering the "preference" obtained by an attachment any more effective in the plaintiffs' favor than it was before the sale was made.

As was determined in Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147, it is the result obtained by the creditor, and not the specific intent of the debtor, which is the essential fact; and as held in Re Rung Furniture Co., 139 Fed. 526, 71 C. C. A. 342, a creditor may obtain a preference by legal proceedings without any affirmative action on the debtor's part. But the lien obtained in these cases had been perfected by judgment and the levy of execution, and the question is still open whether the bankrupt can properly be said to have "suffered or permitted" the preference (if one was obtained) in a case like this. Except by paying the disputed claim, which may have been without merit, so far as now appears, the bankrupt could only vacate such a "preference" as this by proving the claim to be unfounded. That the opportunity to do this had not been afforded him when the sale was made was not his fault, so far as appears. While the sale might have been prevented by giving bond to dissolve the attachment, it cannot be said that any "preference" obtained by the attachment would have been vacated or discharged by such a bond, which would have left the plaintiffs in full possession of any advantage over other "creditors" which their attachment may have given them.

That an attachment on mesne process under Massachusetts laws, not yet followed by judgment, is not enough in itself to constitute a preference obtained by the plaintiff, would seem to follow from Parmenter Co. v. Stoever, 97 Fed. 330, 38 C. C. A. 200, decided by the Court of Appeals in this circuit. There had been such an attachment more than four months before the involuntary petition. This had been followed by judgment, execution, seizure, and sale within the four-month period. In affirming adjudication on the petition, it was said that the preference permitted was the execution sale, and that the four-month period referred to in the statute ran, not from the attachment, but "from a date connected with the proceedings after judgment." If the sale constituted the preference, no preference was obtained merely by the attachment, and none until there had at least been judgment in the suit.

The petitioner cites Re Reichman (D. C.) 91 Fed. 624, and this is the only decision found which directly tends to support the claim that facts like those here shown establish the third act of bankruptcy. The attachment on mesne process in that case was under the laws of Missouri. It is stated that the goods seized were afterward sold in pur-

suance of an order of sale duly made. It is not expressly stated whether there had been judgment or not. The question to which the attention of the court was directed was whether or not the debtor's active participation was necessary. In Bear v. Chase, 99 Fed. 622, 40 C. C. A. 182, which the petitioner also cites, the petition charged that the debtor had permitted the attachment with the object of giving the attaching plaintiff a preference, and the adjudication was not appealed from, so that whether the attachment (which was under the laws of South Carolina) constituted a preference or not was not in controversy. In the cases which have held preferences to have been obtained through legal proceedings, and an attachment has formed part of the proceedings, the attachment has been either after judgment in the suit, or, if before judgment, has been followed by a judgment before the petition in bankruptcy, so that the attachment lien has passed beyond the stage during which it remains wholly uncertain whether there is really any claim against the defendant or not.

On the other hand, no decision is found which expressly denies that an attachment and sale, such as are here shown, constitute an act of bankruptcy. And if adjudication is not ordered on this petition, the plaintiffs may hereafter prevail in their suit, and thus get a preference through their attachment which a later adjudication will not avoid. [9] The attachment lien would not be dissolved by any of the provisions of section 67, by adjudication under a petition filed more than four months after the attachment was made. Not by section 67c (1), though resulting in a preference, because the express language of that clause dissolves such liens only when the proceedings wherein the attachment was made have been begun within four months. Not by 67f, dealing with all liens, whether preferences or not, because that clause, as held in Metcalf v. Barker, reaches attachment liens only when the attachment was made within four months.

But the difficulties in the way of saying that what the petitioners have shown is all that section 3a (3) requires for proof of the act of bankruptcy there described seem to me too serious to be overcome by these considerations. My conclusion must be that the referee rightly declined to find that the alleged act of bankruptcy had been committed, and that no ground for adjudication has been established.

Adjudication denied.