Morris **COHEN, d/b/a Piehler Furs,**
**Petitioner, Appellant,**
v.
**Arthur T. WASSERMAN, Trustee,**
**Appellee.**
**No. 5124.**

United States Court of Appeals
First Circuit.
Heard Oct. 5, 1956.
Decided Dec. 5, 1956.

Alan J. Dimond, Boston, Mass., with whom Widett & Kruger, Boston, Mass., was on brief, for appellant.

Julius Thannhauser, Boston, Mass., with whom Wasserman & Salter, Boston, Mass., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts affirming an order of the referee in bankruptcy, entered on February 29, 1956, denying petitioner-appellant's petition for the establishment of a lien in the amount of $968 on the proceeds of an eminent domain proceeding, held by the respondent-appellee, trustee in bankruptcy.

There being no issue as to the facts, they may be briefly summarized as found by the referee. The petitioner-appellant, Morris Cohen, an individual doing business as Piehler Furs, brought suit against the bankrupt, Antoinette G. Monks, by writ dated August 8, 1949 with an ad damnum of $975. On August 9, 1949, acting under said writ, the appellant caused an attachment to be made on the bankrupt's real estate lo-cated in Suffolk County in the Commonwealth of Massachusetts. On September 8, 1949 the bankrupt's real estate, which was subject to the aforementioned attachment, was taken by the Commonwealth by exercise of the right of eminent domain. On March 10, 1950 the appellant obtained a judgment against the bankrupt in the amount of $968. Within thirty days from the entry of the judgment the sheriff purported to levy on the bankrupt's interest in the attached real estate in Suffolk County. The sheriff immediately suspended further levy by "reason of prior attachments." Presumably, the "prior attachments" mentioned in the sheriff's return referred to the interest of the Commonwealth in the property resulting from the eminent domain proceeding.

Receivers of the bankrupt's property having been appointed on April 11, 1950 by the Superior Court of Suffolk county, the appellant, on May 11, 1950, filed a petition for leave to intervene in the receivership proceeding, alleging that the bankrupt, by virtue of a letter dated February 14, 1950 had ordered the proper state officer to pay appellant $951.98 out of the proceeds of the eminent domain proceeding with respect to the real estate in Suffolk County, and praying that appellant's claim be established as a preferred claim. This petition was never acted upon by the court, and it is not of any significance on this appeal.

On May 25, 1950 bankruptcy proceedings were initiated by an involuntary petition. Subsequently, the Commonwealth paid to the respondent-appellee, trustee in bankruptcy, $32,000 on account of a $48,000 judgment obtained by the appellee ($16,000 of said judgment having been paid to prior mortgagees) for the taking of the bankrupt's real estate. No part of the appellant's claim was paid by the appellee.

The referee, concluding that the title of the bankrupt to the real estate under attachment was extinguished by the taking under eminent domain on September 8, 1949, and that the attachment made by petitioner was extinguished as

a result of the eminent domain proceeding, ordered that appellant's petition to establish a lien, filed August 25, 1955, be denied. This appeal is taken from an order of the district court entered on April 17, 1956 affirming the referee's action.

The question presented is whether appellant's mesne process attachment under Massachusetts law created a valid lien which was transformed into an equitable lien upon the taking of the attached real estate by eminent domain and, as such, was enforceable against the proceeds of the taking even though judgment was not obtained by appellant until after the taking by eminent domain, and notwithstanding that the actual proceeds of the condemnation were not recovered by the trustee until after the owner of the property had been declared bankrupt.

Appellee mainly contends that where realty under mesne process attachment is taken by right of eminent domain the attachment lien is extinguished, and no equitable lien against the proceeds of the taking arises to take its place, because the lien of attachment is merely inchoate. To answer this contention we must first determine the nature of the lien created by appellant's mesne process attachment of August 9, 1949.

■■■ It is clear that the nature of such a lien depends wholly upon the local law. Yumet & Co. v. Delgado, 1 Cir., 1917, 243 F. 519, Massachusetts courts have stated that "an attachment of property on mesne process is a specific charge upon the property," Davenport & Others v. Tilton, 1845, 10 Met. 320, 327, 51 Mass. 320, and, further, that it "doubtless creates an immediate lien," Gardner v. Barnes, 1871, 106 Mass. 505, 506. These cases are consistent with an earlier Supreme Court holding from which it can be gathered that in Massachusetts, for purposes of the bankruptcy law of 1841, an attachment on mesne process created a lien equal in stature to a common law lien, or a lien acquired after judgment. See Peck v. Jenness, 1849, 7 How. 612, 48 U.S. 612, 12 L.Ed. 841.

■■■ That a lien, in Massachusetts, arising from mesne process attachment, is a perfected charge or encumbrance upon the attached property from the time of attachment, is evidenced by the language in In re Blair, D.C.Mass.1901, 108 F. 529, 530, where the court stated that where "the lien is created by the attachment, the judgment and levy create no new or additional lien, but only enforce a lien already existing." See also Gatell v. Millian, 1 Cir., 1924, 2 F.2d 365; In re Crafts-Riordon Shoe Co., D.C.Mass.1910, 185 F. 931. But see Ex parte Foster, C.C.D.Mass.1842, 9 Fed.Cas. p. 508, No. 4,960.

In light of these decisions we believe that mesne process attachment in Massachusetts creates a valid lien on the property attached from the time the attachment is made. A subsequent judgment for the plaintiff does no more than establish the fact that the lien was rightly obtained. Yumet & Co. v. Delgado, supra, 243 F. at page 520. If the lien is inchoate in any way, we believe it is only so as to its enforceability against the encumbered property. The lien cannot be enforced by the attaching plaintiff against the property until he has recovered judgment. See Yumet & Co. v. Delgado, supra at page 520. But, that enforceability of the lien is not available to the plaintiff until judgment is recovered, does not affect the existence and quality of the attachment as a valid lien, as evidenced by the fact that anyone taking the property after the attachment could take it only subject to the lien.

■■■ Having concluded that the appellant had a valid lien at the time of the taking of the attached property by the Commonwealth on September 8, 1949, we must next determine what became of the lien after the taking by eminent domain. Although no Massachusetts cases dealing with this very question have come to our attention, the law is well settled elsewhere that a lien creditor may enforce his lien in equity against the proceeds of an eminent domain award. This principle is enunciated in 2 Nich-

ols, Eminent Domain, § 5.74 (3d Ed. 1950):

> "A lien is not a proprietary interest or an estate in the land, upon which it stands, but is a remedy against it, and, as the legislature may constitutionally impair a remedy without compensation, when land subject to lien is taken by eminent domain, the holder of the lien is not entitled to be made a party, or to recover compensation from the condemnor. It is, however, well settled that the award stands in place of the land, and is subject to the same liens, and that consequently a lienor may proceed against the award upon general equitable principles, and without the aid of any statute. He may have his lien satisfied out of the fund awarded to the owners of the legal title as compensation for the land in advance of other creditors."

That this court undoubtedly would have applied a statutory form of this equitable principle in People of Puerto Rico v. United States, 1 Cir., 1942, 131 F.2d 151, certiorari denied 1943, 318 U.S. 775, 63 S.Ct. 832, 87 L.Ed. 1144, but for the finding that the tax lien under Puerto Rico statutes did not attach prior to the taking of the property by eminent domain, appears abundantly clear from the holding in People of Puerto Rico v. PaloSeco Fruit Co., 1 Cir., 1943, 136 F.2d 886.

Where property was taken by eminent domain, the title to the land vesting in the United States, the Second Circuit recognized that the lien of a first mortgagee was transferred to the award. United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 1942, 129 F.2d 577. In considering whether a tax lien survived the taking of the property by eminent domain, the Third Circuit stated that the "condemnation award when made stands in the place of the land and the rights of all persons may be treated as though transferred to the award." United States v. 25,936 Acres of Land, etc., 3 Cir., 1946, 153 F.2d 277, 279.

Moreover, the Massachusetts courts, in analagous situations, have applied the general principle "by which, in equity, one who has a lien upon property may follow the proceeds, and enforce his lien thereon, if there is no remedy at law." Worcester v. Boston, 1901, 179 Mass. 41, 50, 60 N.E. 410, 412. Thus, in the Worcester case it was held that the mortgagee had an equitable lien upon any surplus proceeds remaining in the hands of the tax authorities who had sold the mortgaged property in a tax sale. In so holding, the court cited an earlier decision, Wiggin v. Heywood, 1875, 118 Mass. 514, where a creditor who had a mesne process attachment on property that was sold at a mortgage foreclosure, prior to recovery of judgment by him, was allowed to maintain a bill in equity to impress an equitable lien upon any surplus proceeds remaining in the hands of the mortgagee. The instant case is strikingly similar to the Wiggin case with the only variable being that here it was the taking by eminent domain instead of a mortgage foreclosure that extinguished the attaching creditor's rights at law. This difference cannot serve to distinguish the instant case from it in view of the broad language of the court in the Wiggin case [at pages 516–517]:

> "No means being provided by the common law or by statute for the attaching creditor to enforce his right in this fund, a case is presented in which a court of chancery, according to its well settled practice, will afford a remedy, to the same effect and upon the same conditions, as nearly as may be, as in proceedings at law in like cases."

Where the collector of taxes of the City of Boston sought in equity to impress the city's legal tax lien upon the proceeds held by a second mortgagee of certain real estate taken by eminent domain, the court recognized the general principle of the Wiggin case, and seems

to have denied the collector the requested relief on the technical ground that his powers, being strictly statutory, authorized him to proceed only "against the person assessed," and the second mortgagee was not that person. Collector of Taxes v. Revere Building, Inc., 1931, 276 Mass. 576, 580, 177 N.E. 577, 578, 79 A.L.R. 112.

Based on the above precedents, we conclude that appellant's mesne process attachment of August 9, 1949, constituting a valid lien, was transformed into an equitable lien upon the taking of the attached property by eminent domain on September 8, 1949, which equitable lien continued until appellant had reduced his claim to judgment, finally attaching upon the condemnation award paid to the appellee, trustee in bankruptcy, on February 25, 1953.[1] From the time of the taking of the property, August 9, 1949, to the time the award was recovered by appellee, February 25, 1953, appellant's equitable lien may be considered as attaching to the right of action that first Monks, the bankrupt, and then her trustee had against the Commonwealth for the taking of the property.

Since the lien arose upon attachment, on August 9, 1949, some ten months before the petition in bankruptcy was filed, it cannot be argued that appellant could not acquire a lien because the property of the bankrupt had come into the custody of the bankruptcy court. It is well established that, "The trustee takes the property of the bankrupt, in cases unaffected by fraud in the same condition that the bankrupt, himself, held it and subject to all valid legal or equitable liens thereon not expressly rendered void by the terms of the Bankruptcy Act [11 U.S.C.A. § 1 et seq.]." Porter v. Searle, 10 Cir., 1955, 228 F.2d 748, 750.

Appellee also contends that appellant lost his equitable lien since he failed to implement it by seizure on execution of property of the bankrupt within thirty days after recovery of judgment as provided by Mass.Ann.Laws c. 223, § 59 (1955).

The record shows that on March 13, 1950, three days after recovery of judgment, execution was issued. Further, that on April 7, 1950, the sheriff suspended further levy presumably due to the fact that the property had been taken by the Commonwealth on September 8, 1949. The appellant could not comply with the statute by enforcing his lien on the proceeds by legal or equitable process in a Massachusetts state court, since no process of attachment, legal or equitable, could have been brought against the taking authority, the Commonwealth, an indispensable party to any proceeding to enforce the lien on the proceeds prior to payment. McCarthy Co. v. Rendle, 1916, 222 Mass. 405, 111 N.E. 39. The Commonwealth cannot be impleaded in its own courts except by its consent clearly manifested by the legislature, and this consent has not been given with respect to either bills to reach and apply or attachment by trustee process. McCarthy Co. v. Rendle, supra; Dewey v. Garvey, 1881, 130 Mass. 86. Under such circumstances, where it is clear that the petitioner's only means of enforcing his lien was to bring the present petition against the trustee in bankruptcy after the trustee had received the payment of the eminent domain award, it would be inequitable to apply the thirty day statutory limitation.

Neither can the appellant be considered as having lost his right to a lien due to his delay in bringing this action. Although appellant waited a period of two and one half years after appellee had recovered the eminent domain award, it cannot be fatal to his petition because appellee has not shown any injury or detrimental change of position due to the delay.

---

1. Although this date does not appear in the findings of the referee, it is included in appellee's brief as a matter of judicial record.

A judgment will be entered vacating the order of the district court and remanding the case to that court for the entry of an order consistent with this opinion.