Billings, Thomas P., J.
The plaintiff, Carmelo Zammitto, brought this action to recover money he provided to the defendants for purposes of starting a hair salon called “Eco-Centrix.” On November 17, 2004, this court granted Zammitto a writ of attachment covering all of the defendants’ real estate located in Middlesex County. Zammitto recorded the attachments in the Middlesex County Registry of Deeds on December 15, 2004. On October 26, 2005, defendants Vincent and Debra Guarnotta filed a suggestion of bankruptcy. The court therefore stayed all proceedings in this action. This matter is now before the court on Zammitto’s motion to reinstate this action and to authorize another attachment on the defendants’ real estate.
*232 DISCUSSION
I. Defendants’ Personal Liability
The court, having reviewed the file in the Guarnottas’ bankruptcy case, takes judicial notice of the events that transpired therein. The Guarnottas filed their joint Chapter 7 bankruptcy petition on October 14, 2005,[2] thereby triggering the automatic stay of 11 U.S.C. §362. Their bankruptcy schedules listed Zammitto’s claim as a secured, contingent, un-liquidated, and disputed claim valued at $25,500.00. Their schedules further indicated two properties subject to Zammitto’s attachment: (1) the Guarnottas’ homestead, located at 62 Orange Street, Reading; and (2) real estate in which Vincent Guarnotta held a fractional interest, located at 54 Prescott Street, Pep-perell. On January 31, 2006, Zammitto commenced an adversary proceeding in the bankruptcy case, in which he objected to the discharge of his claim. The presiding bankruptcy judge dismissed that complaint as untimely, citing Lure Launchers, LLC v. Spino, 306 B.R. 718 (B.A.P. 1st Cir. 2004). On the Guarnottas’ motion, the court also declared null and void a number of liens on the debtors’ homestead, including the prejudgment attachment held by Zammitto. Zammitto thereafter filed numerous motions in the bankruptcy court to have the attachment lien reinstated, each of which the court denied.
The Guarnottas received a bankruptcy discharge on March 22, 2006, pursuant to 11 U.S.C. §727. As a result, the Guarnottas have been discharged of the debt to Zammitto that is the subject of this case. See 11 U.S.C. §727(b) (discharge of pre-petition debts). The discharge also operates as an injunction against the continuation of an action to recover the debt as a personal liability of the Guarnottas. See 11 U.S.C. §524(a)(2) (discharge injunction); see generally Johnson v. Home State Bank, 501 U.S. 78, 84 & n.5 (1991) (discussing discharge of debtor’s personal liability). The Guarnottas are therefore relieved of any personal obligation to pay any debt to Zammitto based on the pre-bankruptcy series of events at issue in this case.
With respect to defendant YN North, Inc., this court is unaware of any bankruptcy filing or other circumstance that would prohibit the plaintiffs action to proceed against it. Such action, however, is against the corporation and any assets it may have, and not against the personal liability of the Guarnottas. YN North, Inc. is presently in default, and Zammitto is entitled to move for a default judgment against the corporation.
II. Zammitto’s Judicial Lien
A bankruptcy discharge precludes enforcement of most debts as a personal liability of the debtor, but does not prevent in rem enforcement of valid liens on non-exempt property. Johnson, 501 U.S. at 85. The nature of a lien on real estate is determined by the law where the property is located. Cohen v. Wasserman, 238 F.2d 683, 686 (1st Cir. 1956); see also Butner v. United States, 440 U.S. 48, 55 (1979) (“Property interests are created and defined by state law”). Under Massachusetts law, an attachment on mesne process “creates a valid lien on the property attached from the time the attachment is made.” Cohen, 238 F.2d at 686. “A subsequent judgment for the plaintiff does no more than establish the fact that the lien was rightly obtained.” Id.
Zammitto’s prejudgment attachment lien upon the debtors’ homestead was declared null and void by the bankruptcy court judge, and cannot now be reinstated by this court. The lien on Vincent’s fractional interest in the Pepperell property, in contrast, was neither disallowed nor avoided during the Guarnottas’ bankruptcy proceeding. In fact, the bankruptcy court’s amended order dated April 21, 2006, specifically clarified that Zammitto’s lien was avoided only with respect to the debtors’ homestead. The lien on the Pepperell property thus survived the Chapter 7 bankruptcy unaffected. See Dewsnup v. Timm, 502 U.S. 410, 417-18 (1992) (lien stays with property until foreclosure); Matter of Annunziata, 2008 WL 410643 at *8 (Bankr.D.Mass. 2008) (“In a Chapter 7 case, a valid lien passes through bankruptcy unaffected unless specifically avoided by an order of the bankruptcy court under a theory recognized by the Bankruptcy Code”).
General Laws c. 235, §24, expressly permits the court to enter a special judgment against the property attached, notwithstanding the Guarnottas’ bankruptcy discharge.[3] Zammitto may therefore pursue his claim to establish the scope and validity of his interest in the property subject to his judicial lien, but is precluded from holding the Guarnottas personally liable for any debt that arose prior to the bankruptcy filing. See, e.g., Matter of Moscoso Villaronga, 111 B.R. 13 (Bankr. D.P.R. 1989) (prejudgment attachment on real property not affected by Chapter 7 discharge); Shawmut Bank v. Brooks Dev. Corp., 699 A.2d 283 (Conn.App.Ct. 1997) (same).[4]
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for attachment be DENIED. It is further ORDERED that the plaintiffs motion to reinstate the case against the Guarnottas be ALLOWED for the limited purpose of pursuing a special judgment based on Zammitto’s judicial lien on property located at 54 Prescott Street, Pepperell. The parties are to appear for a status conference on November 12, 2008 at 2:00 p.m., prepared to discuss further proceedings in accordance with this decision.

The Guarnottas filed their bankruptcy petition just prior to the effective date of the majority of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23 (2005). All citations in this decision are to Bankruptcy Code provisions in effect as of the date of the Guarnottas’ bankruptcy filing.

GeneraI Laws c. 235, §24, provides, in pertinent part, “If a plaintiff would be entitled to a judgment or a decree, except for the bankruptcy or insolvency of the debtor or his discharge therein, and if, more than four months prior to the commencement of proceedings in bankruptcy . . . any property, estate, interest or money of a debtor has been attached,... the court may at any time upon motion enter a special judgment or decree for the plaintiff, for the amount of his debt or damages and costs, or for such other relief as he may be entitled to, to be enforced in the first instance only against the property, estate, interest or money, so attached . . .” Although this statute corresponds more closely with the bankruptcy laws in effect prior to the enactment of the Bankruptcy Code of 1978, see Bankruptcy Act of 1898, §67(f) (voiding judicial attachments obtained within four months prior to the bankruptcy filing [repealed]), the court is not aware of any case law in the Commonwealth that prohibits post-discharge entry of a special judgment against non-exempt property of the bankrupt.

The court recognizes case law contrary to this decision. See, e.g., Sciarrino v. Mendoza, 201 B.R. 541 (E.D.Cal. 1996) (concluding that discharge injunction prevented creditor from converting attachment lien to judgment lien); Matter of Savidge, 57 B.R. 389 (D.Del. 1986) (domestic attachment granted in order to compel defendant’s appearance could not be reduced to judgment following bankruptcy discharge). Given that a prejudgment attachment creates a valid lien under Massachusetts law, the post-discharge enforcement of which is expressly permitted by statute, this court declines to follow these cases. In fact, the bankruptcy trustee’s decision not to liquidate the Pepperell property for the benefit of the estate was largely based on the existence of Zammitto’s judicial lien.