**In re Walter N. AUSTIN, and Virginia Anne Austin, Debtors.**

**Bankruptcy No. 87–1.**

United States Bankruptcy Court, D. Vermont.

April 22, 1987.

John Bernasconi, Barre, Vt., for Central Vermont Medical Center Credit Union (Credit Union).

Raymond J. Obuchowski, South Royalton, Vt., for debtors (Austin).

## MEMORANDUM DECISION AND ORDER GRANTING AVOIDANCE OF LIEN

FRANCIS G. CONRAD, Bankruptcy Judge.

The issue before this Court is whether Austin may avoid under 11 U.S.C. § 522(f) a lien against proceeds held in escrow. The lien is on proceeds from the sale of debtor's homestead, on which a pre-judgment attachment had been placed. Since we hold that the escrow proceeds are property the Austins may exempt; that the attachment is transferred to the proceeds; and that the Credit Union's lien is avoidable because it impairs an exemption, we grant the Debtor's motion to avoid the Credit Union's lien.

On September 19, 1985, Virginia Austin borrowed $3,000.00 from the Credit Union. Her spouse signed the promissory note and security agreement as a co-borrower. The amount of the note totaled $3,083.42. The Credit Union filed a financing statement with the Town Clerk of Williamstown, Vermont, to perfect its interest in the collateral.

The Austins made payments under the terms of the note for approximately one year. On or about September 10, 1986, they stopped making payments. At that time, there was an outstanding balance of $2,528.46, interest due of $86.33, and a per diem thereafter of $0.97. On or about November 7, 1986, Credit Union filed a suit in State Court to collect the promissory note. They sought a judgment for the balance of the note, interest and attorneys fees of $632.12, for a total of $3246.91. Shortly thereafter, the Credit Union obtained an ex-parte attachment of the Austins' real property which was properly served on the debtors and given to the Williamstown Town Clerk.

To make possible the sale of their homestead, the Austins moved to set aside the attachment. A stipulation was negotiated. Credit Union agreed to release all but $2,000.00 of the attachment. As a condition of this release, the parties agreed that $2,000.00 of the homestead proceeds be deposited into an escrow account held by Austins' attorney. A stipulation modifying the attachment was entered and incorporated into a State Court's Order modifying the attachment. The Austins sold the land on December 18, 1986. Proceeds of $2,000.00 were transferred to the escrow account pending a determination of the parties' rights to the funds by a Court of competent jurisdiction.

The Austins filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on January 6, 1987. Walter Austin listed the funds held in escrow as exempt property under 11 U.S.C. § 522(d)(5)[1] on his portion of Schedule B–4. Because it impairs their exemptions, the debtors filed a joint motion to avoid the Credit Union's lien on the escrow account pursuant to § 522(f).[2]

There is no doubt that the escrow proceeds are property of the estate under 11 U.S.C. § 541(a).[3] The intended purpose of the escrow account was to ensure the attaching Credit Union a fund, pending a determination by a Court of competent jur-

---

**1.** Section 522(d) provides:

The following property may be exempted under subsection (b)(1) of this section:
  (5) The debtor's aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided under paragraph (1) of this subsection.

**2.** Subsection (f) of § 522 states:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which

the debtor would have been entitled under subsection (b) of this section, if such lien is—
  (1) a judicial lien ...

**3.** 11 U.S.C. § 541(a) provides:
  (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such an estate is comprised of all the following property, wherever located and by whomever held:
  (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

isdiction of the parties' rights to the homestead proceeds. On the date of Austins' bankruptcy filing no final adjudication on the merits had been made.

■ It is well settled that legal title remains with the depositor until the condition of an escrow is met. *Provident Life and Trust Company of Philadelphia v. County of Mercer*, 170 U.S. 593, 604, 18 S.Ct. 788, 792, 42 L.Ed. 1156, 1161 (1898). The condition precedent for this escrow, a final adjudication on the merits by a Court of competent jurisdiction, has not been satisfied. Thus, the escrow is property of the estate, 11 U.S.C. § 541(a). Compare *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

The broad exemption provisions of the Bankruptcy Code aid a debtor's pursuit of a "fresh start." *In re McQueen*, 21 B.R. 736 (Bkrtcy.D.Vt.1982). Section 522(d)(5), popularly known as the "wild card" exemption, helps achieve the fresh start goal. Primarily, the "wild card" prevents discrimination against those debtors possessing little or no homestead from which they may otherwise claim as exempt property. 1 Norton Bankr L & Prac., § 26.15. Since the Austins no longer have a homestead to claim as exempt, they are the type of debtors the Code intended to benefit from the "wild card" exemption. By claiming the funds held in escrow as exempt property under § 522(d)(5), Austin attempts to fulfill the purpose of the "wild card" provision.

■ Since the escrow proceeds are property of the estate and the debtors have exemptions available to them, we must determine the nature of Credit Union's lien. For an understanding of the lien's character, it is necessary to look at the language of the State District Court's Order on Stipulation to Modify Attachment.[4]

Based on the parties' agreement, the District Court explicitly ordered the attachment released from the Austins' homestead and applied it to the $2,000.00 sale proceeds. By the terms of its Modification Order, the District Court preserved the original ex-parte attachment, Credit Union's rights, and permitted the debtors to sell their homestead, unencumbered. It would be correct to characterize the parties' stipulation to release the attachment as a contract, but a better view would be to describe the stipulation as an agreed Writ of Attachment in proceeds confirmed by Court Order.

Absent the specific language in the District Court's Order, Vermont law extends the preservation of Credit Union's original attachment to the sale proceeds. Unless the holder of an attachment releases all future claim to the encumbered property and the proceeds from a sale thereof, the lien attaches to the proceeds. *Lathrop v. Lawson*, 96 Vt. 513, 517, 121 A. 438 (1923). The stipulation between the parties in this case clearly shows Credit Union had no intention of relinquishing its rights in the homestead by releasing the attachment, but merely agreed to transfer its interest to the proceeds. The Credit Union's lien in its present posture is an enforceable attachment on the escrow account's proceeds. Since the Credit Union retains an attachment in the escrow account funds, we must decide whether its attachment rises to the quality of a judicial lien.

■ The Bankruptcy Code defines a judicial lien in § 101(32).[5] Although the definition does not specifically include liens established by pre-judgment attachments, Courts have incorporated attachments into the provision. *In re Coston*, 65 B.R. 224, 226, 14 B.C.D. 1228, 1229 (Bkrtcy.D.N.M. 1986); *In re McNeely*, 51 B.R. 816, 819 (Bkrtcy.D.U.1985). The Code's legislative history, establishing the differences between judicial and statutory liens, instructs us that:

> proceeds shall be held by the defendant's counsel ..." (emphasis ours).

**4.** The Order on Stipulation to Modify Attachment at paragraph 5 states: "The parties agree that the Writ of Attachment shall be modified to the amount of $2,000.00, and that the Attachment *shall apply to the proceeds* of sale of the mobile home and real property, and that such

**5.** Section 101(32) defines judicial lien as one "obtained by judgement, levy, sequestration, or other legal or equitable process or proceeding."

The definition (of statutory liens) excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), 1978 U.S. Code Cong. & Admin. News, pp. 5787, 6271; S.Rep. No. 95–989, 95th Cong., 2d Sess. 27 (1978), 1978 U.S. Code Cong. & Admin.News, pp. 5812–13. The original attachment here was involuntary. The transfer of the attachment to the escrow account was a practical and expedient method of reducing the homestead to cash. It did not change the substantive nature of the Credit Union's lien, namely, a lien obtained by judicial process. We find Credit Union's lien is a judicial lien within the statutory definition of 11 U.S.C. § 101(32), and therefore, avoidable because it impairs an exemption.

■ The remaining issue raised by Credit Union for resolution is whether the Austins waived their right to claim the escrow account as exempt property, since the debtors had agreed not to impair the Credit Union's rights to the proceeds in exchange for the Credit Union's release of the original attachment on the homestead.

Since the agreement occurred pre-petition, Credit Union argues the Austins waived their homestead exemption. Assuming, arguendo, that the Credit Union is correct and the intent of all parties to the agreement[6] was for the Austins to waive their homestead exemption, the Bankruptcy Code forbids such a waiver. 11 U.S.C. § 522(f) states: "Notwithstanding any waiver of exemption, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption ..."

6. Nothing was presented to us that shows an explicit waiver of any exemption. In fact, the contrary appears to be true, that is, there was no waiver of exemption but merely an agreement

Now Therefore,

It is ORDERED that debtor's motion to avoid the lien of the Central Vermont Medical Center Credit Union is GRANTED, and it is FURTHER ORDERED that the Central Vermont Medical Center Credit Union's lien on the escrow proceeds is void, and it is FURTHER ORDERED that the Clerk of the Bankruptcy Court is directed to enter a separate and final judgment in this matter according to the Rules of Bankruptcy Procedure.

by the parties to sell the homestead and let the lien attach to the proceeds pending a judicial determination of each party's interest.