**In the Matter of Luis T. MOSCOSO VILLARONGA, Debtor.**

**FEDERAL DEPOSIT INSURANCE CORP., in its corporate capacity, Movant,**

v.

**DEBTOR & TRUSTEE, Respondents.**

**Bankruptcy No. 88–01217 (SEK).**

United States Bankruptcy Court, D. Puerto Rico.

Oct. 18, 1989.

John M. García, García & Fernández, Hato Rey, P.R., for debtor.

Frank Gotay Barquet, Feldestein, Gelpi, Hernández & Gotay, San Juan, P.R., for movant F.D.I.C.

Dr. Carlos J. Lastra, Río Piedras, P.R., Trustee.

## OPINION AND ORDER

SARA E. DE JESUS, Bankruptcy Judge.

The Federal Deposit Insurance Co. (F.D.I.C.) filed this Motion Requesting Relief from the Automatic Stay. It claims that, as a partially secured creditor pursuant to 11 U.S.C. § 362(d)(2), it is entitled to a modification of the stay, in order to prosecute its case for collection of money against the Debtor, pending before the U.S. District Court for the District of Puerto Rico, until entry of final judgment and to execute its prejudgment attachment encumbering realty owned by Debtor.

Debtor opposes the Motion claiming the F.D.I.C. is an unsecured creditor because the recorded prejudgment attachment was not a valid, perfected lien encumbering Debtor's realty at the time the bankruptcy petition was filed. Furthermore, Debtor asserts the discharge entered in this case precludes the U.S. District Court from entering the final judgment determining the existence and amount of the debt allegedly owed to the F.D.I.C. Therefore, Debtor would seek a dismissal of the complaint for collection of money filed before the District Court, causing the prejudgment attachment to be dissolved before the lien could be perfected by entry of the final judgment. If the prejudgment attachment were so dissolved there would be equity in the attached realty for the benefit of the Estate which would defeat F.D.I.C.'s Motion.[1] We rule in favor of the F.D.I.C.

The facts as found herein, are not disputed.

The F.D.I.C. in its corporate capacity filed the above mentioned complaint for collection of monies due and owed to the now defunct Girod Trust Co. against Debtor, on November 23, 1987.[2] At F.D.I.C.'s request the U.S. District Court issued an Order and Writ of prejudgment attachment to secure the effectiveness of the judgment that could be ultimately entered against Debtor.[3] The Writ was presented at the

---

1. As per appraisal presented by F.D.I.C. the realty is valued at $230,000.00. The Certificate issued by the Registrar shows the realty is encumbered by a first mortgage in favor of Bayamón Federal Savings, for the principal sum of $88,000.00, and a second mortgage for the principal sum of $100,000.00 payable to the bearer. (The loans secured by these mortgages may be reduced, but that evidence is not available to the Court. As per Schedules, Debtor owes Bayamón Federal Savings, now Banco Santander Federal, $89,000.00 secured by the first mortgage; $25,000.00 to Banco Nacional secured by the second mortgage.) Debtor claimed a homestead exemption of $3,750.00.

2. As of August 15, 1988, Debtor owes the principal sum of $109,576.16; accrued interest in the amount of $40,073.34, which continues to accrue at the rate of $34.5239 per diem; and Attorneys' fees of $10,957.62, or the liquidated amount as per terms of the Note.

3. Pursuant to F.R.C.P. 64 and 28 U.S.C. § 2408, the F.D.I.C. may obtain all remedies provided by the Commonwealth of Puerto Rico for the purpose of securing satisfaction of a judgment. Accordingly, the Hon. Judge Fusté issued an Order of Attachment, Garnishment and Seizure, and Prohibition to Alienate as authorized by 32 Laws of P.R. Ann.App. III R. 56, for a value not

Registry of the Property for the Commonwealth of Puerto Rico, Section I, San Juan, at 11:50 A.M. on 13th of January, 1988, as per Vol. 744 of the Day Book, entry No. 247.[4] It was recorded as cautionary note A, encumbering real property registered in Debtor's name at page 23, vol. 23 of Santurce Norte, farm number 31554 of the same Registry,[5] described in the Spanish language as follows:

"URBANA: Propiedad horizontal, Apartamiento número novecientos cuatro (904). Apartamiento de tres dormitorios localizados en la parte Suroeste de la novena planta del Condominio Condado Princess situado en la esquina de las calles Washington y Conveniencia, Barrio Santurce Norte, Municipio de San Juan, P.R. El apartamiento contiene un área total de mil ochocientos setenta y cuatro pies cuadrados con cuatro décimas de otro (1864.4), equivalentes a ciento setenta y tres metros cuadrados con dos décimas de otro (173.2). Colinda por el Norte con la pared exterior del edificio y con las escaleras; por el Sur, con el patio sur del edificio; por el Este, con el apartamento número novecientos tres (903) y con el pasillo sur de entrada; por el Oeste, con el patio oeste del edificio. Tiene su puerta de entrada y salida por su lado Este que dá al pasillo sur de entrada que a su vez lo conecta con los elevadores y escaleras que conducen al patio del edificio y a la vía pública. Consta de sala-comedor, cocina, terraza cubierta o balcón, salón de familia con balcón, tres dormitorios, dos de los cuales tienen balcón, uno con walk-in closet, dos baños y medio, lavandería y pasillo. Le corresponde a este apartamento los espacios de estacionamiento marcados con el número noventa y tres (93) localizado en la plataforma de estacionamiento y el marcado número veintidós (22) localizado en el sótano del edificio. Le corresponde además un porciento de (1.75400%) en los elementos comunes generales."

Inscrita la finca al folio 19 del tomo 818 de Santurce Norte, finca número 31,554, Registro de la Propiedad de P.R., Sección I, San Juan.

Before a judgment could be entered by the U.S. District Court in the collection suit, Debtor filed this voluntary petition under Chapter 7 of the U.S. Bankruptcy Code, on May 5, 1988. The filing of the petition stayed the proceedings in the United States District Court. F.D.I.C. then filed this Motion for Relief from Stay, entered as Index A in the case.

## ISSUE

Is the F.D.I.C. entitled to relief from stay in this proceeding with respect to debtor's property subject to a prejudgment attachment in a case in which entry of judgment was stayed as a result of the filing in bankruptcy?

## CONCLUSIONS OF LAW

A. *Nature and Effect of the Recorded Prejudgment Attachment Under the Laws of the Commonwealth of Puerto Rico.*

To determine whether a creditor has acquired a lien on the attached real property, the Court must look to the laws of the state in which the writ issues. *In re Coston*, 65 B.R. 224, 226 (Bkrtcy.N.M., 1986); *Cohen v. Wasserman*, 238 F.2d 683, 686 (1st Cir.1956).

Under the Laws of the Commonwealth of Puerto Rico, a prejudgment attachment is a provisional remedy which the law affords a claimant to secure satisfaction of the judgment.[6] A claimant may obtain a writ or-

---

to exceed $160,000.00, on December 31, 1987. The corresponding Writ was issued by the Clerk of Court on that same date.

**4.** See 30 Laws of P.R. Ann., Section 2154, Mortgage and Property Registry Act of 1979, Article 34.

**5.** See 30 Laws of P.R. Ann. Section 2401, Mortgage and Property Registry Act of 1979, Article

112; and Articles 116.4–117.3 of Regulation for the Execution of the Mortgage Law and Registry of the Property of 1979, published as Reg. No. 2674 on July 9, 1980; Brau del Toro, *Apuntes para un Curso Sobre El Estado del Derecho Inmobilario Registral Puertorriqueño bajo la Ley Hipotecaria de 1893,* 48 Rev.Jur.U.P.R. 119,276–321 (1979).

**6.** See R. 56, n. 3.

dering, inter alia, the prejudgment attachment to be recorded by the Registrar on real property of his opponent.[7] Thus, the property attached constitutes a security for payment of the debt, if the debt is found to exist. This provisional remedy is essentially a proceeding for the purpose of establishing a lien to aid in the collection of an unsecured debt.[8] The lien can only be established by strict adherence to every requirement of Rule 56 and applicable sections of the Mortgage Law and its Regulation.[9] Upon recordation of the writ in the appropriate registry, the claimant acquires an inchoate or contingent lien in the attached property, which relates back to the date of its presentation.[10] This inchoate lien vests the attaching claimant with a specific security for satisfaction of the debt. While it exists, the inchoate lien is a charge or encumbrance on the realty and is not subject to be divested, except by a court order or by payment of the underlying debt. *Ramírez v. Registrar of San Juan*, 31 P.R.R. 486 (1923).

Upon entry of judgment in favor of claimant in an action where a prejudgment writ of attachment has been issued and recorded upon real property, the attachment lien merges with the judgment lien in the sense that there cannot be two separate and distinct liens subsisting against the same property to guarantee payment of the same judgment. The prejudgment attachment continues in existence once judgment is entered for the purpose of preserving the lien priority or rank established at the moment of recordation.[11] The judgment

may be collected by enforcing the lien thru a public auction of the realty.[12]

B. *The recorded prejudgment attachment obtained under the laws of Puerto Rico is a perfected "judicial lien" within the meaning of the Bankruptcy Code.*

A judicial lien is defined in Code Section 101(32) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." (Our emphasis). The Court's have interpreted the term as including a prejudgment attachment.[13]

The definition permits judicial liens also to be created by equitable process or proceedings which we hold occurs when a claimant obtains a prejudgment writ of attachment and records in the Registry of the Property as allowed by the Laws of the Commonwealth of Puerto Rico.

Debtor alleges there is no valid judicial lien in this case because the prejudgment attachment must be perfected by entry of the final judgment in the case before the District Court.

Courts frequently state that the judgment perfects the prejudgment attachment lien. But the word perfects is not used to denote an imperfect lien, but rather, it is used in the sense that the prejudgment attachment lien will relate back to the date of its presentation, and that it can only be enforced once a final judgment is obtained by claimant. Thus,

" '[T]he effect of the judgment is merely to determine the existence and amount of

---

7. See n. 3 & 5.

8. *Bank of Porto Rico v. Solá & Son et al.*, 26 P.R.R. 57, 59 (1917); 48 Rev.Jur.U.P.R., 117, 285, 321. Although this case was decided before the amendments to both the Code and Rules of Civil Procedure and the Mortgage Law, it remains good law.

9. See also n. 5.

10. *Yumet & Co. v. Delgado, et al.*, 243 F. 519, 520 (1st Cir.1917).

11. This is why the entry in the Day Book lists not only the time but the date the Writ is presented. See also Article 1822 of the Civil

Code of P.R.1930, 31 Laws of P.R. Ann. Section 5192.

12. 32 Laws of P.R. Ann.App. III R. 51; *Bank of Nova Scotia v. Carle Dubois*, 52 P.R.R. 681 (1938). Subsequent amendments and repeals to both the Code and Rules of Civil Procedure and the Mortgage Law have not varied the principles set forth in this 1938 Opinion.

13. *In re Minton Group, Inc.*, 28 B.R. 774, 780 (Bkrtcy.S.D.N.Y., 1983); *In re Coston*, 65 B.R. 224, 226 (Bkrtcy.N.M., 1986); *In re Austin*, 73 B.R. 75, 77 (Bkrtcy.Vt., 1987). Contra *Matter of Resto del Valle*, 73 B.R. 216 (Bkrtcy.P.R., 1987) and *Matter of Seijo Custodio*, 74 B.R. 11 (Bkrtcy. P.R., 1987).

the debt, and to substitute the plaintiff for the defendant as the person to whom it is payable.' [This substitution is applicable in garnishments.]

Neither of these effects create the lien. Since the inchoate lien is perfected by entry of judgment, and since neither of the results of judgment effect the lien, it seems that entry of judgment does not perfect the lien by creating it. Rather, it seems that entry of judgment perfects the lien by removing its contingent character. That the lien is contingent upon entry of judgment follows from the rule that the lien cannot be enforced unless judgment is entered against the garnishee." (cit. omitted) *In re Unit Oil Co.,* 50 F.Supp. 264, 267 (D.C.Minn., 1943).[14]

Thus, the word "perfects" as used by the Courts refers to enforceability and not validity of the lien. It is not used by the Courts in the same sense that it is used in the preference section of the U.S. Bankruptcy Code, 11 U.S.C. Section 547(e). Furthermore, a valid, recorded, prejudgment lien is not subject to avoidance under the Code unless it was recorded within the ninety day period immediately preceeding the filing of the petition.[15]

Thus, as stated by the Court of Appeals for the First Circuit in *Yumet,* n. 10 at 520,

"... attachment as mesne process, such as the laws of the states within this Circuit permit, is to be regarded as creating a lien in plaintiff's favor, valid from the time the attachment is made, and not nullified or avoided by subsequent bankruptcy proceedings under the present act, unless the same are begun within four months following such attachment; and this notwithstanding the fact that

the lien so obtained is inchoate only, and subject to be lost if the suit wherein it has been made does not result in a judgment in plaintiff's favor. The lien is considered as obtained when the attachment is made, and a subsequent judgment for the plaintiff as doing no more than establish the fact that it was rightly obtained. Such a judgment, followed by execution and levy only enforces the lien created by the attachment. (cit. omitted)

... That what is in substance a lien upon the property attached is created when an attachment is made under the above provisions of the Porto Rican Code cannot in our opinion be denied. The right or interest then acquired by the plaintiff in property so attached is referred to as a 'lien' in the decisions of the Supreme Court of Porto Rico. (cit. omitted) (emphasis supplied) [16]

### C. *Effect of the Discharge on the Prejudgment Attachment Which is a Judicial Lien.*

The legislative history of Code Section 524 shows, "The Bankruptcy discharge will not prevent the enforcement of valid liens ... on non-exempt property." [17] According to Congressional intent, this Section was "... designed to prevent post discharge harrassment by creditors whose accounts were discharged or whose liens were disallowed.[18] Confusion stems from describing the effects of discharge as the equivalent of "extinguishing" or "releasing" debts. As stated by *Norton,* these words are often misleading, because in fact,

"... the basic effect of discharge is to interpose a permanent barrier against debt collection, rather than to retroac-

**14.** See also *Gatell v. Millian,* 2 F.2d 365 (1st Cir.1924); *Morris W. Haft & Bros. v. Wells,* 93 F.2d 991, 995 (10th Cir.1937); *Cohen v. Wasserman,* 238 F.2d 683, 686 (1st Cir.1956); *In re McNeely,* 51 B.R. 816, 818–819 (Bktcy.D.Utah, 1985); *Yumet,* n. 10 at 521.

**15.** *In re McNeely,* 51 B.R. 816, 819–820 (Bkrtcy. D.Utah, 1985).

**16.** See also, *Sales v. Samac Motors Corp.,* 92 P.R.R. 514 (1965); *In re Black Ranches, Inc.,* 362 F.2d 8, 14 (8th Cir.1966) Cert. denied by *Black v. Strand,* 385 U.S. 990, 87 S.Ct. 595, 17 L.Ed.2d

450 (1966); *In re Cherokee Public Service Co.,* 20 F.Supp. 195, 196–197 (D.C.Ark., 1937). Aff'd. by 94 F.2d 536 (8th Cir.1938).

**17.** *Estate of Lellock v. Prudential Ins. Co. of America,* 811 F.2d 186, 188 (3rd Cir.1987); *Chandler Bank of Lyons v. Ray,* 804 F.2d 577, 579 (10th Cir.1986); *United Presidential Life Ins. Co. v. Barker,* 31 B.R. 145, 147 (D.C.N.D., Tx., 1983); 1 *Norton Bankruptcy Law and Practice,* Section 27.04.

**18.** *United,* n. 17 at 147.

tively absolve the underlying debt.... Code section 524(a) does not preclude all post discharge actions that lead to recovery of some part of a debt by the creditor. Specifically, consistent with prior law, Section 524 does not bar the creditor from enforcing a valid, prebankruptcy lien or security interest against property that has been retained by the debtor or the estate after discharge.... Actions to collect against the debtor personally are enjoined. The creditor's action in enforcing a lien is against the property *in rem* and with no recourse against the debtor." [19]

Thus, it has been stated that liens survive discharge.[20]

Furthermore, express language of 11 U.S.C. § 506(d) in its pertinent part indicates that valid liens survive discharge when it provides:

"(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such a lien is void unless—

(1) such claim was disallowed only under Section 502(b)(5) or 502(e) of this title;...." [21]

The Legislative history of Section 506 cited in *United*, n. 17 at 147 states that, "Subsection (d) permits liens to pass through the bankruptcy case unaffected." Thus, when disallowance is not granted, the lien survives bankruptcy.

Debtor's argument claiming that under the Laws of Puerto Rico a recorded prejudgment attachment on real property is extinguished if the underlying debt it guarantees is abolished, is generally speaking, correct. However, as seen above, the dis-

charge in bankruptcy does not extinguish the underlying debt. It only prevents debtor from being personally liable for the discharged debt and forecloses collection of any deficiency judgment, thereby limiting the claimant to enforce its collection efforts in *in rem* actions against property subject to a valid, prebankruptcy lien guaranteeing payment of the debt.

## CONCLUSION

Wherefore, the F.D.I.C. obtained a valid, prebankruptcy, inchoate, judicial lien upon recording the writ authorizing the prejudgment attachment as cautionary note A on the date of its presentation, or January 31, 1988, encumbering Debtor's described realty in the amount of $160,000.00. Under these circumstances, the unrefuted evidence shows the F.D.I.C. is a secured creditor, whose valid judicial lien is not affected by the discharge entered in the case.

The stay is lifted because the liens encumbering the realty exceed its value. The F.D.I.C. can pursue the case filed before the U.S. District Court against the Debtor to establish the existence and the amount of the debt secured by its judicial lien. The collection of a final and unappealable judgment which could be entered in F.D.I.C.'s favor, is limited to *in rem* execution proceedings of the real property encumbered by the lien.

**19.** 1 *Norton Bankruptcy Law and Practice*, sections 27.02 and 27.04.

**20.** *In re Cornist*, 7 B.R. 118, 3 C.B.C.2d 381, 384 (Bkrtcy.S.D.Cal., 1980); *In re Robertson*, 4 B.R. 213, 6 B.C.D. 375, 2 C.B.C.2d 136 (Bkrtcy.D. Colo., 1980); *In re Sillani*, 9 B.R. 188 (Bkrtcy. S.D., Fla., 1981); *In re Williams*, 7 B.R. 234, 3 C.B.C.2d 409 (Bkrtcy., M.D.Ga., 1980); *In re Honaker*, 4 B.R. 415, 6 B.C.D. 474, 2 C.B.C.2d 208 (Bkrtcy.E.D.Mich., 1980); *In re Weathers*, 15 B.R. 945, 948, 5 C.B.C.2d 935 (Bkrtcy.D.Kan., 1981); *In re Smiley*, 26 B.R. 680 (Bkrtcy.D.Kan. 1982); *In re Nason*, 22 B.R. 690 (Bkrtcy.D.Me.,

1982); 3 *Collier on Bankruptcy*, Section 524.01, (15th ed.); *United*, n. 17 at 147; *In re Landmark*, 48 B.R. 626 (Bkrtcy.D.Minn., 1985); *In re Atoka Agricultural Systems, Inc.*, 39 B.R. 474 (Bkrtcy. E.D.Va., 1984) and *Estate of Lellock*, n. 18 at 189.

**21.** See also *United*, n. 17 at 147. "Though a lien be not discharged by bankruptcy, its owner may not, without the bankruptcy court's permission, institute proceedings in a state court to enforce it, since his so doing might interfere with the orderly administration of the estate." *Straton v. New*, 283 U.S. 318, 51 S.Ct. 465, 466, 75 L.Ed. 1060 (1931).