**In re CARLOS A. RIVERA, INC., Debtors.**

**QUADREL LEASING de PUERTO RICO, INC., etc., Movant,**

**v.**

**CARLOS A. RIVERA, INC., Respondent.**

**Bankruptcy No. B–90–02752(ESL).**

United States Bankruptcy Court, D. Puerto Rico.

Aug. 21, 1991.

Luis A. Medina Torres, Hato Rey, P.R., for debtor.

Fernando Torrent, San Juan, P.R., for creditor Quadrel Leasing de PR.

1. Rule 56 provides that the court may issue a provisional order of attachment to secure satisfaction of a judgment upon motion of a claimant. Attachment of real property is effected by recording the order with the property registry,

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This case is before the Court upon the motion of Quadrel Leasing de Puerto Rico, Inc., Quadrel Leasing Corporation and Quadrel Brothers Trucking Co. (hereinafter referred to as "Quadrel") to lift the automatic stay pursuant to 11 U.S.C. § 362 (1990). At the hearing held on March 18, 1991, the Court made findings of fact and granted the parties thirty days to file briefs as to whether a pre-petition attachment of moveable property constitutes a lien within the meaning of the laws of Puerto Rico.

### Findings of Fact

Quadrel is engaged in the business of leasing trailer tank trucks for the transportation of hazardous chemicals. In November, 1987, Quadrel leased four trucks to debtor, three of which were later returned. On March 20, 1989, Quadrel filed suit against debtor in the Superior Court of Puerto Rico to recover unpaid rent on the leased equipment in the amount of $16,-250.00, damage to the trucks in the amount of $12,750.00, the value of the unreturned truck, appraised by Quadrel at $26,790.00, and rent lost on the unreturned truck at the rate of $850.00 per month. Quadrel's total claim would be $76,040 as of June 30, 1991. To secure payment of the judgment, Quadrel obtained a garnishment on personal property of debtor. Subsequently, the garnishment was substituted by a $47,-000.00 judicial bond and the property was returned to the debtor. Quadrel later obtained a second garnishment on personal property of debtor pursuant to Rule 56 of the Puerto Rico Rules of Civil Procedure.[1] Said property, a truck, was placed with a receiver and is valued at $8,000.00 by an appraisal obtained by Quadrel. The Superior Court proceeding was stayed by debtor's filing of his petition.

Quadrel argues that the automatic stay should be lifted for cause, in that debtor's petition was filed in bad faith in order to stop the proceedings in Superior Court.

while an attachment of personal property is effected by depositing the property in court or with a person designated thereby. P.R.Laws Ann. tit. 32, App. III, R. 56 (1979).

They allege that said proceedings were repeatedly delayed by debtor's actions, including their request to suspend the final hearing scheduled for March 21, 1990, which was rescheduled for June 1, 1990, then stayed by the filing of the bankruptcy petition on that same date. Specifically, Quadrel argues that it lacks adequate protection of its interest in the property because the amount of its claim exceeds the security. Quadrel's security consists of the $47,000.00 judicial bond and the debtor's garnished truck. Quadrel has submitted an appraisal valuing the truck at $8,000.00. Thus, the total security is $55,000.00, while the claim amounts to $76,040.00, leaving a deficit of $21,040.00. Furthermore, Quadrel points out that the value of the truck is declining and the amount owed for lost revenue on the missing truck is increasing.

Quadrel further argues that debtor has no equity in the property and that the property is not necessary for effective reorganization. Debtor has no equity in the truck because the amount secured by its attachment far exceeds its fair market value. Quadrel argues that the truck must not be necessary to the effective reorganization of the estate, or the debtor would have obtained another judicial bond to release it.

Debtor alleges that Quadrel does not have a valid lien because a final judgment has not been entered by the Superior Court and that therefore Quadrel is not a secured creditor and is not entitled to lift the automatic stay. Debtor claims that the attached truck is worth $60,000.00, although they have submitted no support for said allegation. Debtor argues that Quadrel's attachment of their truck is depriving them of property necessary to their operation and has caused them to lose an estimated $46,000.00 in income. They argue that Quadrel has an unfair advantage over the other unsecured creditors by virtue of their attachment, and that lifting the automatic stay would strengthen this unfair advantage and be detrimental to the estate.

## Discussion

■ The Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of "any act to create, perfect or enforce any lien against property of the estate;" and of "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case." 11 U.S.C. § 362(a)(4),(5). The term "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (1990). The Bankruptcy Code provides for three types of liens: judicial liens, security interests and statutory liens. 11 U.S.C. § 101(36), (51), and (53) (1990). A "judicial lien" is a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36) (1990). The court must look to the laws of the state in which the writ of attachment issues in order to determine if a creditor has acquired a lien on attached real property. *Cohen v. Wasserman*, 238 F.2d 683, 686 (1st Cir.1956); *Yumet & Co. v. Delgado*, 243 F. 519, 521 (1st Cir.1917).

The Bankruptcy Code further provides that, upon request of a party in interest, and after notice and a hearing, the court may grant relief from the automatic stay:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (1990). Section 362 also states that in any hearing concerning relief from the automatic stay, "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property ... and the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g) (1990).

This Court has previously held that creditors holding a prejudgment attachment on debtors' property do not hold valid and perfected liens and therefore are unsecured creditors and are not entitled to a lift of the

automatic stay. *In re Seijo Custodio*, 74 B.R. 11 (Bankr.D.P.R.1987); *In re Resto Del Valle*, 73 B.R. 216 (Bankr.D.P.R.1987). In each of those cases a creditor with a collection action pending before the local courts had recorded a cautionary notice in the registry of property pursuant to Puerto Rico law[2], but had not obtained a final judgment before the debtor's bankruptcy petition was filed. The undersigned bankruptcy judge held that a cautionary notice is not a judicial lien within the meaning of 11 U.S.C. § 101 because a final judgment has not been obtained; that is, that an attachment lien is not a "lien obtained by judgment." 74 B.R. at 12; 73 B.R. at 217. Therefore, the creditors were not secured within the meaning of 11 U.S.C. § 506 (1978).[3] *Id.* The Court relied on *Correa Sanchez v. Registrar*, 113 D.P.R. 581, 13 Official Translations of the Opinions of the Supreme Court of Puerto Rico 750 (1982), wherein it is stated that a cautionary notice of the attachment of real property recorded in the property registry is a *pro tempore* protection subject to the final results of the suit.[4] The Court also relied on *In re Savidge*, 57 B.R. 389 (D.Del.1986), wherein the court held that a prejudgment attachment lien, unperfected by judgment before the filing of a bankruptcy petition, is not a sufficient lien to create secured status for the creditor making the attachment. *Id.* at 390.[5]

The Ninth Circuit Court of Appeals reached a similar conclusion in *In re Posner*, 700 F.2d 1243 (9th Cir.1983), wherein it found that a pre-judgment writ of attachment does not transform an unsecured debt into a secured one. The court held "[t]he so-called pre-judgment attachment lien on real property creates an inchoate lien unperfected until entry of a valid final judgment. The perfected lien relates back in priority to the date of the pre-judgment attachment, but it secures the judgment, not the unsecured provable debt." *Id.* at 1245. However, the court in *Posner* was relying on one of a series of Supreme Court decisions involving priority disputes between federal tax liens and various non-federal liens.[6] We find those decisions in-

---

2. *Supra*, note 1. A person who lawfully obtains an attachment order in his favor on real property of the debtor may request that a cautionary notice be entered in the property registry. 30 L.P.R.A. § 2401 (1979).

3. Section 506 provides that a creditor's claim which is secured by a lien on property in which the estate has an interest is a secured claim.

4. *Correa Sanchez* involved a notice of lis pendens. The Supreme Court stated "[d]espite the differences we had acknowledged between the entry of the notice of *lis pendens* ... and the cautionary notice ... both mechanisms converge in the common purpose of subjecting the property in question to the outcome of the suit filed, placing any person acquiring dominion or any real right over the property in question in the position of an acquirer pendente lite." Official Translations at 760. Further, "[t]he protection afforded by a notice of *lis pendens* is materialized from the moment it is entered, even if its substantive and permanent effects, which modify the main entry, are only attained when it is no longer provisional, and the one making the entry receives the full protection of the Registry when he emerges victorious with a final decision from the judicial cause that motivated it. As a cautionary measure to secure the effectiveness of judgment, it reduces the defendants' *ius disponendi*. (citation omitted) In this sense, it is similar to the cautionary notice in the Registry produced by the attachment of real property ..." *Id.* at 761.

5. The reasoning of *Savidge* was criticized in *In re Wind Power Systems, Inc.*, 841 F.2d 288 (9th Cir.1988), wherein the court stated "the *Savidge* opinion cites no case law in support of its conclusion, and the logic of its application by the bankruptcy court would also overturn a strong line of cases in this court allowing prepreference lien creditors to proceed to judgment. (Citations omitted).

The bankruptcy court incorrectly relied upon *Savidge*. Although its holding does not directly conflict with superior authority, its applications to these facts runs counter to a long line of cases upholding liens in the face of the trustee's section 544 powers and allowing lienholders to proceed to judgment after bankruptcy.

As a matter of policy, the *Savidge* result is undesirable." *Id.* at 293.

6. The Ninth Circuit cited *United States v. Security Trust & Savings Bank of San Diego*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), wherein the Supreme Court found that under California Law, "the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists." 340 U.S. at 50, 71 S.Ct. at 113. The Court stated "[n]or can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation." *Id.* The Court held that the United States's tax liens, which were recorded after the creditor's attachment but be-

applicable to the instant case, which does not involve any federal claim.

Subsequent to the undersigned judge's rulings in *In re Seijo Custodio* and *In re Resto Del Valle*, another judge of this court reached a different conclusion in *In re Moscoso Villaronga*, 111 B.R. 13 (Bankr.D.P.R.1989) (De Jesus, J.). There the court held that a recorded prejudgment attachment obtained under Puerto Rico law constituted a valid, perfected judicial lien. The case involved a motion to lift stay by the Federal Deposit Insurance Co. (F.D.I.C.), which had a cause of action against the debtor for the collection of money pending before the U.S. District Court. The F.D.I.C. obtained an Order and Writ of prejudgment attachment against real property of the debtor and recorded the same as a cautionary notice in the property registry pursuant to Puerto Rico law. Before judgment could be entered in the collection action the debtor filed a bankruptcy petition which stayed the proceedings in the district court.

A judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36) (1990). The court in *Moscoso Villaronga* found that the obtention of a prejudgment writ of attachment and the recording of the same in the property registry according to Puerto Rico law constitutes a "legal or equitable process or proceeding" by which a judicial lien may be created, and that there-fore the term "judicial lien" encompasses a pre-judgment writ of attachment as obtained under Puerto Rico law. 111 B.R. at 16. Other courts have found that the term "judicial lien" as defined in the Bankruptcy Code includes a prejudgment attachment. *In re Figy*, 102 B.R. 785, 787 (Bankr. S.D.Cal.1989); *In re Austin*, 73 B.R. 75, 77 (Bankr.D.Vt.1987); *In re Coston*, 65 B.R. 224, 226 (Bankr.D.N.M.1986); *In re McNeely*, 51 B.R. 816, 819 (Bankr.D.Utah 1985); *In re Minton Group, Inc.*, 28 B.R. 774, 780 (Bankr.S.D.N.Y.1983).

The court in *Moscoso Villaronga* further found that the judicial lien created by the prejudgment attachment was valid and perfected. 111 B.R. at 17. The court stated:

> Courts frequently state that the judgment perfects the prejudgment attachment lien. But the word perfects is not used to denote an imperfect lien, but rather, it is used in the sense that the prejudgment attachment lien will relate back to the date of its presentation, and that it can only be enforced once a final judgment is obtained by claimant.

*Id.* at 16. Although the prejudgment attachment is inchoate, the entry of final judgment does not perfect the attachment lien by creating it, but rather by removing its contingent character. *Id.* Thus, the term "perfects", as used by the courts, refers to the enforceability, not the validity of the lien. *Id. See also Cohen v. Wasserman*, 238 F.2d 683, 686 (1st Cir.1956); *In re Unit Oil Co.*, 50 F.Supp. 264, 267

---

fore he obtained judgment, were superior to the attachment lien. 340 U.S. at 51, 71 S.Ct. at 114. See also, *United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *United States v. Pioneer American Insurance Company*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. White Bear Brewing Company*, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956); *United States v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). In this series of cases the Supreme Court applied the federal common law principle of "first in time is first in right" to priority disputes between federal tax liens and various nonfederal liens. The Court established a federal common law rule of "choateness" to determine when the nonfederal liens arose, rather than applying state law. The "choateness doctrine" provided that a lien's priori-ty was measured from the time it became choate; that is, when the identity of the lienor, the property subject to the lien, and the amount of the lien were established. Thus, to render his lien choate, the lienor must usually reduce his claim to a judgment. Using this method virtually guaranteed the federal tax lien's priority in such disputes. In response to the application of these doctrines to disputes involving non-tax federal liens by the lower federal courts, Congress amended the lien provisions of the Internal Revenue Code in 1966 to make them more consistent with modern commercial practices in the states. Since then the circuit courts have split on the issue; the First Circuit continues to apply the "choateness" doctrine to such disputes. *Rodriguez v. Escambron Development Corp.*, 740 F.2d 92 (1st Cir.1984); *Chicago Title Insurance Company v. Sherred Village Associates*, 568 F.2d 217 (1st Cir.1978).

(D.Minn.1943). *Cf. Morris W. Haft & Bros. v. Wells,* 93 F.2d 991, 995 (10th Cir. 1937) (garnishment lien not affected by bankruptcy proceeding; claimant has right to perfect lien by prosecuting garnishment proceeding to judgment in state court); *Elkay Reflector Corporation v. Savory,* 57 F.2d 161 (2nd Cir.1932) (where property has been attached by mesne process, the lien dates from the original levy irrespective of when the judgment is recovered); *Julius S. Cohn & Co. v. Drennan,* 19 F.2d 642 (E.D.La.1927) (lien does not result from or arise out of the judgment, it arises primarily out of the attachment and upon the service of that writ; judgment merely recognizes the lien as a valid pre-existing right to priority); *In re Cherokee Public Service Co. Dickinson v. Orr,* 20 F.Supp. 195, 196 (E.D.Ark.1937) (effect of judgment merely to enforce valid attachment lien established under state law); *In re Paul,* 67 B.R. 342, 347 (Bankr.D.Mass.1986) (attachments recorded pursuant to Massachusetts law were perfected and valid). Upon entry of final judgment in an action in which a prejudgment attachment exists upon real property, the attachment lien merges with the judgment lien in the sense that there cannot be two separate and distinct liens against the same property to guarantee the same judgment; the attachment lien continues in existence once judgment is entered to preserve the lien's priority. *Moscoso Villaronga,* 111 B.R. at 16; *McNeely,* 51 B.R. at 819. The entry of final judgment perfects the inchoate attachment lien, which thereby relates back to the date of its entry. *Coston,* 65 B.R. at 226; *McNeely,* 51 B.R. at 819.

The court in *Moscoso Villaronga* relied on *Yumet & Co. v. Delgado,* in which the First Circuit Court of Appeals held that a prejudgment attachment of personal property under the laws of Puerto Rico creates a valid lien. 243 F. 519 (1st Cir.1917). The court stated:

[A]ttachment on mesne process . . . is to be regarded as creating a lien in the plaintiff's favor, valid from the time the attachment is made . . . and this notwithstanding the fact that the lien so obtained is inchoate only . . . The lien is considered as obtained when the attachment is made, and a subsequent judgment for the plaintiff as doing no more than establish [sic] the fact that it was rightly obtained. Such a judgment, followed by execution and levy, only enforces the lien created by the attachment.

*Id.* at 520. The court further stated:

That what is in substance a lien upon the property attached is created when an attachment is made under the above provisions of the Porto Rican Code cannot in our opinion be denied. The right or interest then acquired by the plaintiff in property so attached is referred to as a "lien" in the decisions of the Supreme Court of Porto Rico.

*Id.* at 522, citing *Auffant v. Succession Ramos,* 23 P.R.R. 410 (1916) and *Oronoz & Co. v. Alvarez,* 23 P.R.R. 497 (1916). Although *Yumet* involved a prior version of the Puerto Rico Code of Civil Procedure [7], the language is substantially similar to the present version.

Debtors argue that the decisions of the Supreme Court of Puerto Rico relied upon by the court in *Yumet* have been clarified by subsequent decisions which establish that under Puerto Rico law a pre-judgment attachment is perfected by execution of the final judgment. However, the opinions cited are not so clear. In *Puerto Rico Bedding Manufacturing Corp. v. Herger,* 91 D.P.R. 519, 91 P.R.R. 503 (1964), the court found that an attachment is not sufficient to place the attached property beyond the

---

7. Code of Civil Procedure §§ 5233–5250 (1902). Section 5233 provided "Every person who shall bring an action for the fulfillment of any obligation may obtain an order from the court having cognizance of the suit providing that the proper measures be taken to secure the effectiveness of the judgment as the case may require it, should it be rendered in his favor." Section 5234(b) provided that where the obligation was the payment of money, the proper measure was "the attachment of sufficient property of the debtor to cover the amount claimed." Section 5242 provided that an attachment on personal property "shall be effected by depositing the personal property in question with the court, or the person designated by it, under the responsibility of the plaintiff." *Yumet,* 243 F. at 521.

operation of § 1822 of the Civil Code,[8] which establishes a preference to creditors for the purchase price of the attached property. 91 P.R.R. at 508. In *F.D. Rich Co. of Puerto Rico, Inc. v. Superior Court of Puerto Rico*, 99 D.P.R. 158, 99 P.R.R. 155 (1970), creditor Arsuaga, in an action for the collection of money, obtained an attachment which included an amount owed by Rich to Metropolitan Mechanical Constructors, Inc. Metropolitan consented to judgment, which was subsequently entered along with a writ of execution. Pursuant to § 1824 of the Civil Code Arsuaga had a preference, having obtained a final judgment.[9] The court distinguished the attachment available under Rule 56 of the Puerto Rico Rules of Civil Procedure from statutory garnishment proceedings in the United States. However, neither of these cases hold that a prejudgment attachment is perfected by the entry of final judgment.

*Yumet* has been followed in subsequent opinions of the first circuit and is still good law. *Underwriters' Salvage Co. of New York v. Gilman*, 299 F. 388 (1st Cir.1924) (by attachments of funds creditor secured valid liens against debtor's subsequent bankruptcy petition); *Gatell v. Millian*, 2 F.2d 365 (1st Cir.1924) (attachment made more than four months prior to the filing of the petition in bankruptcy created a valid lien); *Cohen v. Wasserman*, 238 F.2d 683 (1st Cir.1956) (mesne process attachment in Massachusetts creates a valid lien on the property attached from the time the attachment is made). *Yumet* has also been cited by the Supreme Court of Puerto Rico in *Sales v. Samac Motor Corporation*, 92 D.P.R. 529, 92 P.R.R. 514 (1965). That case was a collection action in which an attachment was levied against machinery and other personal property of the defendant corporation, which subsequently filed for bankruptcy. The supreme court cited the bankruptcy judge's ruling that the attachment was valid, relying on *Yumet*. 92 P.R.R. at 518. The court further stated that the attachment conferred upon Sales the status of a secured creditor. *Id.* at 520.

### Conclusions of Law

The court holds that a prejudgment attachment constitutes a lien under the law of Puerto Rico. *Cohen v. Wasserman*, 238 F.2d 683 (1st Cir.1956); *Yumet & Co. v. Delgado*, 243 F. 519 (1st Cir.1917); Rules of Civil Procedure, P.R.Laws Ann. tit. 32, App. III, R. 56 (1979). In doing so the court revokes its previous decisions in *In re Seijo Custodio*, 74 B.R. 11 (Bankr. D.P.R.1987) and *In re Resto Del Valle*, 73 B.R. 216 (Bankr.D.P.R.1987). Consequently, the court finds that Quadrel's pre-judgment attachment of debtor's property, made in accordance with the laws of Puerto Rico, constitutes a valid and perfected lien within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(36) (1990).

Based on the foregoing, the court finds that Quadrel is a secured creditor under 11 U.S.C. § 506 (1978). Quadrel, as the party requesting relief from the automatic stay, has met its burden of proof as to debtor's lack of equity in the attached property, while debtor has submitted nothing more than allegations as to adequate protection of Quadrel's interest or its equity in the attached property. 11 U.S.C. § 362(g) (1990).

WHEREFORE, Quadrel's motion to lift the automatic stay pursuant to 11 U.S.C. § 362(d) is hereby granted.

SO ORDERED.

---

8. Codified at 31 L.P.R.A. § 5192 (1930).

9. Codified at 31 L.P.R.A. § 5194(4)(b) (1930).